Citation Nr: 1331578 
Decision Date: 09/30/13 Archive Date: 10/02/13

DOCKET NO. 05-02 443 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Houston, Texas


THE ISSUE

1. Entitlement to an initial rating for posttraumatic stress disorder higher than 30 percent before July 11, 2013, and an initial rating higher than 50 percent from July 11, 2013.
 
2. Entitlement to a total disability rating for compensation based on individual unemployability.

REPRESENTATION

Veteran represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

Veteran
ATTORNEY FOR THE BOARD

N. L. Northcutt, Counsel 


INTRODUCTION

The Veteran, who is the appellant, served on active duty from April 1970 to November 1971, which included service in the Republic of Vietnam.

This matter is before the Board of Veterans' Appeals (Board) on appeal of a rating decision in May 2007 of the Department of Veterans Affairs (VA) Regional Office (RO) in Houston, Texas.

In April 2009, the Veteran appeared at a hearing before the undersigned Veterans Law Judge. A transcript of the hearing is in the Veteran's file.

In December 2009, in October 2011, and in July 2013, the Board remanded the claim for further development, which has been completed. Stegall v. West, 11 Vet. App. 268, 271 (1998). 


FINDINGS OF FACT

1. Prior to July 11, 2013, posttraumatic stress disorder has been manifested by reduced reliability and productivity under the criteria of the General Rating Formula for Mental Disorders, and the symptoms associated with the diagnosis of posttraumatic stress disorder under the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, of the American Psychiatric Association (DSM-IV), which is referred to in 38 C.F.R. § 4.130 (rating mental disorders), but not covered in the General Rating Formula, but occupational and social impairment with deficiencies in most areas, such as work, family relations, judgment, thinking, or mood are not demonstrated an any time during the appeal.






2. Since July 11, 2013, posttraumatic stress disorder causes occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood; but does not cause total occupational and social impairment; there is no evidence of gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living; disorientation to time or place; memory loss for names of close relatives, own occupation or own name attributed to his PTSD.


CONCLUSIONS OF LAW

1. The criteria for an initial rating for posttraumatic stress disorder higher than 30 percent before July 11, 2013, have not been met. 38 U.S.C.A. § 1155 (West 2002 & Supp. 2013); 38 C.F.R. § 4.130, Diagnostic Code 9411 (2013).

2. The criteria for an initial rating for posttraumatic stress disorder of 70 percent since July 11, 2013, have been met. 38 U.S.C.A. § 1155 (West 2002 & Supp. 2013); 38 C.F.R. § 4.130, Diagnostic Code 9411 (2013).

The Veterans Claims Assistance Act of 2000 (VCAA)

The VCAA, codified in part at 38 U.S.C.A. §§ 5103, 5103A, and implemented in part at 38 C.F.R § 3.159, amended VA's duties to notify and to assist a claimant in developing information and evidence necessary to substantiate a claim. 









Duty to Notify

Under 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b), when VA receives a complete or substantially complete application for benefits, it will notify the claimant of the following: (1) any information and medical or lay evidence that is necessary to substantiate the claim, (2) what portion of the information and evidence VA will obtain, and (3) what portion of the information and evidence the claimant is to provide. 

Also, the VCAA notice requirements apply to all five elements of a service connection claim. The five elements are: (1) veteran status; (2) existence of a disability; (3) a connection between the veteran's service and the disability; (4) degree of disability; and (5) effective date of the disability. Dingess v. Nicholson, 19 Vet. App. 473 (2006). 

In a claim for increase, the VCAA requirement is generic notice, that is, the type of evidence needed to substantiate the claim, namely, evidence demonstrating a worsening or increase in severity of the disability and the effect that worsening has on employment. Vazquez-Flores v. Shinseki, 580 F.3d 1270 (Fed. Cir. 2009) (interpreting 38 U.S.C.A. § 5103(a) as requiring generic claim-specific notice and rejecting veteran-specific notice as to the effect on daily life and as to the assigned or a cross-referenced Diagnostic Code under which the disability is rated). 

The VCAA notice must be provided to a claimant before the initial unfavorable adjudication by the RO. Pelegrini v. Principi, 18 Vet. App. 112 (2004). 

On the initial rating claim for posttraumatic stress disorder, the RO provided pre-adjudication VCAA notice by letters, dated in March 2006 and in April 2006, on the underlying claim of service connection for posttraumatic stress disorder. 





Where, as here, service connection has been granted and an initial disability rating has been assigned, the claim of service connection has been more than substantiated, it has been proven, thereby rendering 38 U.S.C.A. § 5103(a) notice no longer required because the purpose that the notice was intended to serve has been fulfilled.

Once the claim of service connection has been substantiated, the filing of a notice of disagreement with the RO's decision rating the disability does not trigger additional 38 U.S.C.A. § 5103(a) notice. Therefore, further VCAA notice under 38 U.S.C.A. § 5103(a) and § 3.159(b)(1) is no longer applicable in the claim for an initial higher rating, following the initial grant of service connection. Dingess, 19 Vet. App. 473; Dunlap v. Nicholson, 21 Vet. App. 112, 116-117 (2007); Goodwin v. Peake, 22 Vet. App. 128 (2008).

Duty to Assist

Under 38 U.S.C.A. § 5103A, VA must make reasonable efforts to assist the claimant in obtaining evidence necessary to substantiate a claim. The RO has obtained VA records and private medical records. 

The Veteran was afforded VA examinations in 2007, 2010, and 2013. As the reports of the VA examinations are based on the Veteran's medical history and described the disability in sufficient detail so that the Board's decision is a fully informed one, the examinations are adequate. Stefl v. Nicholson, 21 Vet. App. 120, 123 (2007). 

As there is no indication of the existence of additional evidence to substantiate the claim, the Board concludes that no further assistance to the Veteran in developing the facts pertinent to the claim is required to comply with the duty to assist.





REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

General Rating Principles

A disability rating is determined by the application of VA's Schedule for Rating Disabilities (Rating Schedule), 38 C.F.R. Part 4. The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and their residual conditions in civil occupations. Separate diagnostic codes identify the various disabilities. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. 

VA has a duty to acknowledge and consider all regulations that are potentially applicable through the assertions and issues raised in the record, and to explain the reasons and bases for its conclusions. Schafrath v. Derwinski, 1 Vet. App. 589 (1991). 

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. 

The Board will consider whether separate ratings may be assigned for separate periods of time based on facts found, a practice known as "staged ratings," whether it is an initial rating case or not. Fenderson v. West, 12 Vet. App. 119, 126-27 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007). 










Rating Criteria

Disability ratings are based upon VA's Schedule for Rating Disabilities as set forth in 38 C.F.R. Part 4. The percentage ratings represent as far as can practicably be determined the average impairment in earning capacity in civil occupations. 38 U.S.C.A. § 1155.

Posttraumatic stress disorder is rated under Diagnostic Code 9411 under the General Rating Formula for Mental Disorders.

Under Diagnostic Code 9411, the criteria for a 30 percent rating are occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, and mild memory loss (such as forgetting names, directions, recent events).

The criteria for the next higher rating, 50 percent, are occupational and social impairment with reduced reliability and productivity due to such symptoms as flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short-and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; and difficulty in establishing and maintaining effective work and social relationships.






The criteria for the next higher rating, 70 percent, are occupational and social impairment with deficiencies in most areas, including work, school, family relationships, judgment, thinking or mood, due to such symptoms as suicidal ideation; obsessional rituals which interfere with routine activities; intermittently illogical, obscure, or irrelevant speech; near-continuous panic or depression affecting ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); and inability to establish and maintain effective relationships.

The criteria for the next and maximum rating, 100 percent, are total occupational and social impairment due to such symptoms as gross impairment in thought processes or communication; persistent delusions; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent ability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; and memory loss for names of close relatives, own occupation, or own name.

The Global Assessment of Functioning (GAF) scores reflect the psychological, social, and occupational functioning of an individual on a hypothetical continuum of mental health, are also useful indicators of the severity of a mental disorder. DSM-IV (American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994)).

GAF scores ranging between 61 to 70 reflect mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally indicate that the individual is functioning pretty well, and has some meaningful interpersonal relationships. 




Scores between 51 to 60 are indicative of moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).

The evidence considered in determining the level of impairment from posttraumatic stress disorder is not restricted to the criteria under the General Rating Formula for Mental Disorder. Instead, VA must consider all symptoms that affect the level of occupational and social impairment, including, if applicable, those identified in the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, (DSM-IV), of the American Psychiatric Association, pertaining to the diagnosis of posttraumatic stress disorder.

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise the lower rating will be assigned. 38 C.F.R. § 4.7.

The Board will consider whether separate ratings may be assigned for separate periods of time based on facts found, a practice known as "staged ratings," whether it is an initial rating case or not. Fenderson v. West, 12 Vet. App. 119, 126-27 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007).

When it is not possible to separate the effects of the service-connected condition from a nonservice-connected condition, both the service-connected and nonservice-connected signs and symptoms are attributed to the service-connected condition. Mittleider v. West, 11 Vet. App. 181 (1998).

In sum, neither the number of symptoms, nor the type of symptoms, nor the GAF score controls in determining whether the criteria for the next higher rating have been met. It is the effect of the symptoms, rather than the presence of symptoms, pertaining to the criteria for the next higher rating, that is determinative.



Facts

In a rating decision in May 2007, the RO granted service connection for posttraumatic stress disorder and assigned an initial rating of 30 percent, effective December 30, 2004, the effective date for the grant of service connection.

While on appeal, in a rating decision in July 2013, an Agency of Original Jurisdiction increased the rating to 50 percent effective July 11, 2013, creating a staged rating, that is, separate ratings for separate periods of time during the pendency of the appeal.

On a private psychiatric evaluation in July 2005, the Veteran complained of chronic insomnia, agitation, paranoia, and a startle reaction, as well as flashbacks, nightmares, and recurring thoughts regarding his combat experiences while serving in the Vietnam. On mental status examination, the Veteran was fully oriented and demonstrated appropriate recall, but he stated that he was easily distracted. He had a tense, apprehensive, and sad mood. He stated that he had experienced suicidal ideation, but denied any active ideation or plans. 

Private medical records through July 2007 show that the Veteran complained of almost the same symptoms. The Veteran stated the medication had decreased his anxiety and improved his sleep. The Veteran also stated that his relationship with his wife had improved, that he had regular contact with his children and his parents, whom he and his siblings cared for. He stated that he was better able to handle his frustration with co-workers. The Veteran denied either homicidal or suicidal ideation, and the mental status evaluations were essentially normal.

VA records from November 2005 to December 2009 show that the Veteran symptoms had not changed. He stated that he enjoyed the support of his wife, children, and grandchildren. He also stated that his medication helped to alleviate his symptoms. He stated that he did have ongoing frustration with co-workers. 



The Veteran described symptoms of depression related to the deaths of several family members, including his father-in-law, mother, brother, and nephew. The GAF scores were 60 in August 2006, in November 2006, in April 2007, in July 2007, in September 2007, in January 2008, in March 2008, in May 2008, in September 2008, in November 2008, and in December 2009. The GAF scores were 58 in August 2008, in July 2009, and in October 2009. The GAF scores were 57 in March 2009 and in April 2009. The mental status evaluations were essentially normal, except for the Veteran's mood, which was described as anxious and dysphoric, and his judgment and insight described as fair.

On VA examination in April 2007, the Veteran complained of PTSD symptoms, including a sleep impairment, nightmares, flashbacks, hypervigilance as checking for locked doors, self-isolation, anger, irritability, and a startle response to loud noises. On mental status evaluation, the Veteran was dressed appropriately. He was groomed and oriented. He was withdrawn with a sad mood and blunted effect. Concentration was intact. Speech was slow with a normal volume. The Veteran did no describe panic attacks, delusions, hallucinations, illusions, or obsessive rituals. His thought process was sparse but intact. His recent and remote memory was intact. He demonstrated no impairment of judgment or abstract thinking. He reported no homicidal or suicidal ideation. 

In April 2009, the Veteran testified that he had symptoms of anger, strained relationships with his co-workers, a preference to work by himself, frequent nightmares and flashbacks, sleep impairment, and difficulties in his marriage. 

On VA examination in February 2010, the Veteran stated that his therapy sessions and medications helped to improve his symptoms of posttraumatic stress disorder. He stated that he had a good relationship with his wife and children and that he enjoyed recreational hunting and fishing with friends. He stated that he had anxiety attacks three times a month. 




The Veteran denied a history of violence or assaultiveness, but he did describe an incident within the year in which he physically confronted an individual over a minor misunderstanding.

On mental status evaluation, the Veteran appeared clean, and neatly groomed. Psychomotor activity and speech were unremarkable. The Veteran's attitude was cooperative. Affect was appropriate. His mood was anxious and he was easily distracted. He was oriented. There were no delusions, hallucinations, or obsessive rituals. Judgment and insight were intact. There was no homicidal or suicidal ideation. The Veteran's impulse control was assessed as impaired. The VA examiner described the Veteran's PTSD symptoms as producing reduced reliability and productivity, due to such symptoms as irritability and poor sleep, which affect his social and occupational relationships and physical health.

VA records in February 2013 show that the Veteran's mental status evaluation was largely consistent with other evaluations, except for the description of the Veteran's mood as dysphoric, but improved. A GAF score of 62 was assigned. 

On VA examination in July 2013, the Veteran stated that he had retired from his job due to severe irritability and anxiety, even though he was working the night shift with few co-workers. The Veteran described a depressed mood, anxiety, suspiciousness, chronic sleep impairment, impairment of short- and long-term memory, disturbances in emotion and mood, difficulty in establishing and maintaining effective work and social relationships, difficulty in adapting to stressful circumstances, including work or a work-like setting; suicidal ideation; and persistent danger of hurting himself or others. The GAF score was 52. The VA examiner characterized the symptoms of posttraumatic stress disorder as producing occupational and social impairment with deficiencies in most areas, including work, family relations, judgment, thinking, or mood.





Analysis

A Rating Prior to July 11, 2013

Reconciling the various reports into a consistent disability picture, two elements of the present disability emerge. First, the Veteran has symptomatology that is associated with the rating criteria under the General Rating Formula and symptomatology not covered in the rating criteria, but are associated with the diagnosis of posttraumatic stress disorder under the DSM-IV, which is referred to in 38 C.F.R. Part 4, § 4.130 (rating mental disorders). And two, while there has been some fluctuation in the symptoms of posttraumatic stress disorder, a material change in the overall severity of the disorder has not been demonstrated at any time during this rating period. Since the Veteran has filed his claim for service connection, the disability picture has remained essential constant in symptomatology, in the clinical findings, and in the impact on occupational and social function. 

Private and VA records from this period and VA examination reports show largely consistent symptomatology with the Veteran consistently describing symptoms associated with posttraumatic stress disorder (nightmares, flashbacks, self-isolation, hypervigilence, startle response) and with the results of mental status evaluations as essentially normal, with the exception of the Veteran's depressed and dysphoric mood, fair judgment, and impaired memory. The Veteran did maintain effective relationships with his wife, children, parents, in-laws, and siblings. Also while expressing frustration with co-workers, the Veteran successfully maintained his full-time employment throughout the rating period.








The impact of posttraumatic stress disorder on occupational and social functioning, which occasionally decreases in work efficiency and intermittent periods of inability to perform tasks (although generally functioning satisfactorily with routine behavior, self-care, and conversation normal), is supported by the Veteran's complaints, symptomatology, and the clinical findings, and is consistent with the GAF scores, which ranged from 57 to 62, indicative of at most moderate symptoms, (for example, occasional panic attacks or moderate difficulty in social and occupational, such as few friends and conflicts with peers or co-workers). 

As for occupational impairment for a rating higher than 30 percent, that is 50 percent, at any time since the effect date of service connection until July 2013, 
the disturbances of motivation and mood do not more nearly approximate or equate to the criteria for the next higher rating, that is, a consistent pattern of occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory; impaired abstract thinking; or difficulty in establishing and maintaining effective work and social relationships.

The evidence of record reflects that Veteran was employed full-time (he first reported his retirement during his July 2013 VA examination) and did not report any occupational impairment, such as excessive absenteeism or demotion, other than frustration with co-workers.

As for social impairment, the Veteran maintained a marriage of many years, although variously reporting the marital relationship as supportive or strained, and consistently reported good relationships with his children, grandchildren, and extended family.

On the basis of the evidence, the criteria for the next higher rating, 50 percent, have not been met before July 11, 2013.


A Rating from July 11, 2013

From July 11, 2013, the Veteran's disability picture has been manifested by symptoms of anxiety, irritability, and depression. Some of the Veteran's symptomatology is associated with the rating criteria under the General Rating Formula for Mental Disorders, Diagnostic Code 9411, and some of the symptomatology is associated with the diagnosis of posttraumatic stress disorder under the DSM- IV. All of the symptoms are considered in the analysis.

For a rating higher than 50 percent under the General Rating Formula for Mental Disorders and the symptoms associated with the diagnosis of posttraumatic stress disorder under DSM-IV, there must be evidence of occupational and social impairment resulting in deficiencies in most areas such as family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work like setting); and inability to establish and maintain effective relationships.

On VA examination in July 2013, the VA examiner characterized the Veteran's symptoms as productive of symptoms resulting in deficiencies in most areas such as family relations, judgment, thinking, or mood. The VA examiner noted the Veteran's retirement was due to irritability and anxiety. During the examination, the Veteran appeared anxious, pacing back and forth, avoiding eye contact, and difficulty focusing on the questions posed to him. The VA examiner assigned a GAF score of 52, which reflects moderate difficulty in social or occupational functioning, for example, few friends and conflicts with peers or co-workers. 




On the basis of the evidence, namely, the VA examiner's observations of the Veteran's behavior and examiner's clinical assessment of the level of the Veteran's psychosocial impairment, and the assigned GAF score, a 70 percent rating is warranted from July 11, 2013. 

As for the criteria for 100 percent rating, the Veteran's symptoms do not more nearly approximate or equate to total occupational and social impairment due to such symptoms as gross impairment of thought processes and communication, persistent delusions or hallucinations, grossly inappropriate behavior, persistent danger of hurting oneself or others, intermittent inability to perform activities of daily living, disorientation to time or place, or memory loss for names of close relatives, own occupation or own name. Also, the GAF score of 52 does not indicate symptoms of such severity as to render the Veteran totally occupationally and socially impaired.

Therefore since July 11, 2013, a 70 percent rating is assigned.

Extraschedular Consideration

Although the Board is precluded by regulation from assigning an extraschedular rating under 38 C.F.R. § 3.321(b)(1) in the first instance, the Board is not precluded from considering whether the case should be referred to the Director of VA's Compensation and Pension Service for such a rating.

The threshold factor for extraschedular consideration is a finding that the evidence presents such an exceptional disability picture that the available schedular ratings for the service-connected disability are inadequate. This is accomplished by comparing the level of severity and symptomatology of the service-connected disability with the established criteria.







If the criteria reasonably describe the disability level and symptomatology, then the disability picture is contemplated by the Rating Schedule, and the assigned rating is adequate and referral for an extraschedular rating is not required. Thun v. Peake, 22 Vet. App. 111, 115 (2008), aff'd sub nom. Thun v. Shinseki, 572 F.3d 1366 (Fed. Cir. 2009). Comparing the Veteran's current disability level and symptomatology to the Rating Schedule, the degree of disability is encompassed by the Rating Schedule and the assigned schedular ratings are adequate. In other words, the Board finds that the rating criteria reasonably describe the entire Veteran's psychiatric symptomatology, and the Veteran does not have any symptomatology not already encompassed by the Rating Schedule. For this reason, referral for an extraschedular rating is not warranted under 38 C.F.R. § 3.321(b)(1).


ORDER

An initial rating higher the 30 percent for posttraumatic stress disorder before July 11, 2013, is denied.

An initial disability rating of 70 percent for posttraumatic stress disorder since July 11, 2013, is granted.

REMAND

On VA examination in July 2013, the Veteran stated that he had ceased working due to the severe anxiety and irritability, implicitly raising a claim for a total disability rating for compensation based on unemployability. Rice v. Shinseki, 22 Vet. App. 447, 453-54 (2009).





Accordingly, the claim is REMANDED for the following action:

1. Ensure VCAA compliance with the duty to notify and the duty to assist on the claim for a total disability rating for compensation based on individual unemployability.

2. After the above development, adjudicate the claim. If the benefit sought is denied, then furnish the Veteran and his representative a supplemental statement of the case and return the case to the Board. 

The Veteran has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

The claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2013).



____________________________________________
George E. Guido Jr. 
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs