# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 03-0320

DALE O. DUNLAP, APPELLANT,

V.

R. JAMES NICHOLSON,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided     March 22, 2007     )

*Kenneth M. Carpenter*, of Topeka, Kansas, for the appellant.

*Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Catherine A. Chase*, Acting Deputy Assistant General Counsel; and *Robert W. Legg*, all of Washington, D.C., for the appellee.

Before MOORMAN, DAVIS, and SCHOELEN, *Judges*.

DAVIS, *Judge*: In *Dingess v. Nicholson*, 19 Vet.App. 473, 491 (2006), we held that when a decision awarding service connection, a disability rating, and an effective date has been issued *prior to the enactment* of the Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, § 3(a), 114 Stat. 2096 (codified in part as 38 U.S.C. § 5103(a)), then section 5103(a) notification is not required because "the purpose that the notice is intended to serve has been fulfilled." The question presented to us today is whether VA committed procedural error when it failed to provide notice pursuant to section 5103(a) before it awarded service connection, an initial disability rating, and an effective date in a decision issued *after* the VCAA's enactment. For the reasons provided below, we recognize that such failure on VA's part constitutes procedural error. However, because we hold that the appellant's claim was more than substantiated–it was *proven*–at the assignment of the initial disability rating, the appellant must demonstrate to the Court that he was prejudiced by the error. Because the appellant has not met his burden, remand on notification

grounds is not required. We therefore affirm the Board of Veterans' Appeals' (Board's) January 14, 2003, decision that Mr. Dunlap's service-connected bipolar condition is not entitled to an initial disability rating in excess of 30%. *Overton v. Nicholson*, 20 Vet.App. 427, 439 (2006) (quoting *Kotteakos v. United States*, 328 U.S. 750, 760 (1946)).

## I. BACKGROUND

Veteran Dale O. Dunlap served on active duty for training in the U.S. Army from July 1968 to August 1973. His service consisted primarily of two-week training periods each summer. The only two-week period relevant to this appeal was one that began on July 29, 1973. A few days after reporting for training duty on that date, the Army designated Mr. Dunlap unfit for duty and sent him home.

On August 8, 1973, after returning home from training, Mr. Dunlap was admitted to the Irwin Army Community Hospital for psychiatric evaluation and treatment. He was released on August 24, 1973. Clinical records from that hospitalization indicated that Mr. Dunlap experienced feelings of guilt, fear of death, and "confused thinking of [a] two to three week duration." Record (R.) at 72. He was diagnosed as having "reaction, depressive, psychotic manifestations unknown." R. at 43. The clinical records noted that Mr. Dunlap's mother had passed away approximately six weeks before his most recent period of service and that her death had a significant psychological effect on him.

In November 1978, Mr. Dunlap filed with the Wichita, Kansas, regional office (RO) a service-connection claim for his depression. The record on appeal does not reflect that Mr. Dunlap had experienced any depressive or psychotic episodes prior to the relevant period of active training duty. Nevertheless, in February 1980, the RO determined that, based on Mr. Dunlap's reaction to his mother's death, his condition must have "preceded his training." R. at 111, 113. Mr. Dunlap failed to appeal that decision, thereby rendering it final.

In January 1997, Mr. Dunlap filed a request to reopen his previously denied service-connection claim for depression based on the submission of new and material evidence. Between January 1997 and July 2001, he submitted lay and medical evidence in support of service connection. Mr. Dunlap's private physician, Dr. Edward Eaton, opined that the veteran's bipolar disorder began

2

during, not before, his active duty training. He further opined that, based on the longevity of Mr. Dunlap's symptoms, the RO incorrectly assumed that his manifestation of depressive symptoms was simply a reactive psychotic episode.

In addition, Mr. Dunlap's fellow reservist, Mr. Nordyke, testified that he knew of Mr. Dunlap's mother's passing, and, in his opinion, Mr. Dunlap handled the situation very well. Mr. Nordyke further testified that, in his opinion, it was not Mr. Dunlap's mother's death that caused his psychiatric condition; rather, the condition was the result of a confrontational relationship between the veteran and several people living with Mr. Dunlap in the same barracks during active duty training. Based on the newly submitted evidence, in July 2001, a decision review officer (DRO) granted Mr. Dunlap entitlement to service connection for a bipolar condition, and awarded a 30% disability rating, effective from January 3, 1997.

In December 2001, Mr. Dunlap, through his current legal representative, filed a Notice of Disagreement (NOD) regarding the July 2001 DRO decision. In his NOD, he asserted disagreement on two grounds. First, he argued that VA failed to properly carry out its duty-to-notify obligations pursuant to 38 U.S.C. § 5103(a) as to the degree of disability. Second, he stated that the DRO erred by not awarding him entitlement to a higher disability rating, specifically a 100% disability rating, to include consideration of total disability based on individual unemployability (TDIU). He requested that VA vacate the July 2001 DRO decision, correct the applicable procedural errors, and award him a 100% disability rating. He submitted various private medical records and Social Security Administration records in support of his contentions.

In August 2002, the DRO issued a Statement of the Case (SOC), summarizing the developments following the July 2001 DRO decision and informing Mr. Dunlap of the basis for his initial 30% disability rating. The SOC provided Mr. Dunlap the general rating formula for mental disorders, and explained why the evidence submitted warranted a 30% disability rating rather than a 50% rating. The SOC was also sent to Mr. Dunlap's legal representative.

In October 2002, Mr. Dunlap filed his Substantive Appeal and his case was certified and transferred to the Board for appellate review. In its January 14, 2003, decision here on appeal, the Board denied Mr. Dunlap entitlement to an initial rating in excess of 30% for his bipolar condition. The Board noted that Mr. Dunlap had raised a claim for TDIU, but, because the RO had not

3

adjudicated that claim, the Board lacked jurisdiction over that matter.

## II. DISCUSSION

### A. 38 U.S.C. § 5103(a) Notification

#### 1. Contentions on Appeal

On appeal, Mr. Dunlap first asserts that remand is required because he was not provided section 5103(a) notification. He maintains that while this matter was pending before VA, he filed three "claims." The first was his 1997 claim to reopen based on new and material evidence, which was filed, but not substantiated, prior to the VCAA's enactment. He also contends that when he filed his NOD in December 2001, he filed the following two additional "claims": (1) A "claim" for an initial rating of more than 30% for his bipolar disorder; and (2) a "claim" for an extraschedular rating based on unemployability. *See* Appellant's Memorandum of Law (Memo.) at 3-4.

He further argues that the term "application" contained in section 5103(a) is interchangeable with the term "claim." *Id.* at 5-6. Therefore, he contends that, upon filing his NOD and the two new "claims" or "applications" contained therein, VA was obligated, pursuant to section 5103(a), to notify him of the evidence and information necessary to substantiate these "claims." Moreover, Mr. Dunlap asserts that because he filed these "claims" or "applications" after the enactment of the VCAA, this matter is entirely distinguishable from *Dingess, supra*, and VA's failure to provide notice here, unlike its failure in *Dingess*, is fatal and requires remand. *Id.* at 3.

Relying on *Dingess*, the Secretary of Veterans Affairs (Secretary) argues that Mr. Dunlap's claim for his bipolar disorder was substantiated by the July 2001 DRO decision and that no further notice pursuant to section 5103(a) was required. He further contends that Mr. Dunlap's argument that section 5103(a) notification requirements were triggered because his request for a higher initial rating constituted a new "claim" is unavailing and should be rejected in light of *Dingess* and the VA notification scheme contained in sections 5103(a), 5103A, and 38 U.S.C. § 7105. Secretary's Memo. at 6-7. In addition, he asserts that Mr. Dunlap has abandoned any argument that the VCAA notice provided prior to substantiation was deficient. *Id.* at 11. Finally, the Secretary maintains that VA fully complied with all postsubstantiation notification requirements. Therefore, he requests that the Court reject Mr. Dunlap's request for remand on notification grounds.

## 2. VA's Notification Obligations Regarding the Degree of Disability

Although we do not find the appellant's rationale persuasive, for reasons not argued, we hold that, pursuant to section 5103(a), VA was obligated to notify him regarding the degree-of-disability element of his claim. As amended, section 5103(a) provides:

> (a) REQUIRED INFORMATION AND EVIDENCE.–Upon receipt of a complete or substantially complete application, the Secretary shall notify the claimant and the claimant's representative, if any, of any information, and any medical or lay evidence, not previously provided to the Secretary that is necessary to substantiate the claim. As part of that notice, the Secretary shall indicate which portion of that information and evidence, if any, is to be provided by the claimant and which portion, if any, the Secretary, in accordance with section 5103A of this title and any other applicable provisions of law, will attempt to obtain on behalf of the claimant.

38 U.S.C. § 5103(a). Mr. Dunlap's claim for service connection was pending at VA at the time the VCAA was enacted, and VA was required to provide section 5103(a) notice as to his claim.

*Dingess* held that 38 U.S.C. § 5103(a) notification must be provided on all five elements of a service-connection claim: (1) Veteran status; (2) existence of a disability; (3) a connection between the veteran's service and the disability; (4) degree of disability; and (5) effective date of the disability. *Dingess*, 19 Vet.App. at 486. Concerning notice on the initial disability rating element, *Dingess* observed that in order for the Secretary to comply with section 5103(a), he must

> notify the claimant of any information, and any medical or lay evidence, not previously provided to the Secretary, that is necessary to establish a disability rating for each of the disabilities contemplated by the claim and allowed under law and regulation. Specifically, *the Secretary must, at a minimum,* notify the claimant that, should service connection be awarded, a schedular or extraschedular disability rating will be determined by applying relevant diagnostic codes in the rating schedule, found in title 38, Code of the Federal Regulations, to provide a disability rating from 0% to as much as 100% (depending on the disability involved) based on the nature of the symptoms of the condition for which disability compensation is being sought, their severity and duration, and their impact upon employment. Moreover, consistent with the statutory and regulatory history, that notice must provide examples of the types of medical and lay evidence that the claimant could submit (or ask VA to obtain) that are relevant to establishing a disability–e.g., competent lay statements describing symptoms, medical and hospitalization records, medical statements, employer statements, job application rejections, and any other evidence showing exceptional circumstances relating to the

disability.

*Id.* at 488 (emphasis added). The Court went on to hold that

> [i]f the claimant's application suggests there is specific information or evidence necessary to resolve an issue relating to elements of a claim, VA must consider that when providing notice and tailor the notice to inform the claimant of the evidence and information required to substantiate the elements of the claim reasonably raised by the application's wording.

*Id.* at 488-89. Therefore, *Dingess* sets forth a minimal notification obligation on the element of degree of disability, requiring additional specificity depending on the content of the claimant's initial application for benefits. Contrary to Mr. Dunlap's contention, however, such notification is required before, not after, the initial VA decision awarding service connection and assigning an initial disability rating. *See Mayfield v. Nicholson*, 444 F.3d 1328, 1333 (Fed. Cir. 2006) ("[T]he post-2000 version of section 5103 requires the VCAA notification to be issued prior to the initial decision on the claim, not afterwards."). When he filed his NOD *after* his service-connection award, his claim had been more than substantiated, and section 5103(a) was no longer required. *See Dingess*, *supra*.

We find unpersuasive Mr. Dunlap's contention that the filing of his NOD disagreeing with the initial disability rating assigned constituted a new claim that required section 5103(a) notification. We agree with the Secretary's position that the VA title 38 statutory notification scheme does not support the appellant's argument. In *Grantham v. Brown*, 114 F.3d 1156, 1158-59 (Fed. Cir. 1997), the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) stated that an NOD filed within one year of an RO's decision assigning a rating initiated appellate review of the claim concerning the element of compensation level. In such circumstances, an NOD as to the rating assigned initiates appellate review of the issue of rating and is not a new claim for a rating increase. Accordingly, Mr. Dunlap's argument must fail.

### 3. Review of Board's Section 5103(a) Notification Findings

Having reiterated above that section 5103(a) notification must be provided on all five elements of a service-connection claim, including the initial disability rating, we now turn to the decision here on appeal to discern whether the Board rendered a finding regarding VCAA notification and whether that finding is supported by an adequate statement of reasons or bases and a plausible basis in the record. *See Mayfield,* 444 F.3d at 1335 (noting that the adequacy of notice

6

must be assessed in accordance with "the particular information provided to [the claimant] in light of the circumstances of [his or] her claim," which ultimately "turns on what inferences [VA] draws from the facts before it."); *see also Prickett v. Nicholson*, 20 Vet.App. 370, 378 (2006) (holding that this Court reviews the factual findings regarding notice under the "clearly erroneous" standard of review); *see also* 38 U.S.C. § 7104(d)(1).

As to section 5103(a) notification, the Board concluded in relevant part:

> The rating decision, [SOC,] and VA letters to the veteran, apprised him of the information and evidence needed to substantiate the claim, the law applicable in adjudicating the appeal, and the reasons and bases for VA's decision. Furthermore, these documents outline the specific medical and lay evidence that was considered when the determination was made. In a November 2001 letter, the RO informed the veteran of the enactment of the VCAA and explained what evidence was required to substantiate his claim. He was asked to identify any outstanding evidence and was provided with the appropriate release forms for VA to request this information on his behalf.

R. at 4.

We agree with the appellant that the Board's findings regarding section 5103(a) are clearly erroneous and unsupported by an adequate statement of reasons or bases. First, the Board erroneously relied on various decisional and postdecisional documents to support its conclusion that section 5103(a) notification had been satisfied. *See Mayfield*, 444 F.3d at 1333 (noting that section 5103(a) requires notification to be issued "prior to the initial decision of the claim, not afterward"). Second, none of the documents cited by the Board informed the appellant of the requisite minimal level of information or evidence set forth in *Dingess* necessary to substantiate his claim. Such minimal notice must include general notice that if service connection is awarded, a disability rating will be determined by applying relevant diagnostic codes in the rating schedule and examples of the types of evidence that the claimant could submit. *See Dingess*, 19 Vet.App. at 488. The appellant received no notice in compliance with the VCAA between the enactment of the VCAA in November 2000 and the adjudication of his claim by the DRO in July 2001. Accordingly, we agree with the appellant's assertion of notification error.

B. Prejudicial Error Analysis

*1. Prejudicial Error Generally*

Having found a notice deficiency, the Court must take due account of the rule of prejudicial

error.  *See* 38 U.S.C. § 7261(b) ("In making the determinations under subsection (a) of this section, the Court shall take due account of the rule of prejudicial error.").  A procedural or substantive error is prejudicial when the error affects a substantial right that a statutory or regulatory provision was designed to protect.  *See McDonough Power Equip. v. Greenwood*, 464 U.S. 548, 553 (1984).  Such an error affects the essential fairness of the adjudication.  *Id.*; *see also Intercargo Ins. Co. v. United States*, 83 F.3d 391 (Fed. Cir. 1996).  Accordingly, if the error does not affect the "essential fairness" of the adjudication, then it is not prejudicial.  *McDonough, supra*.  Therefore, in order for the Court to be persuaded that no prejudice resulted from a notice error, the record must demonstrate that, despite the error, the adjudication was nevertheless essentially fair.  *Id.*  In other words, the Court must be persuaded that the error did not render the claimant without a meaningful opportunity to participate effectively in the processing of his or her claim.  *See Overton*, *supra*.

### 2.  Burdens in the Context of First-Element Notice Error Allegations

We have previously explained that generally, an appellant must assert with specificity how he or she was prejudiced by any notification error.  *See id.* at 435.  In carrying out this burden, the appellant must demonstrate with considerable specificity (1) how the notice was defective, and (2) how that error was prejudicial or affected the essential fairness of the adjudication.  *See id*.  Once the appellant has done so, the Secretary must demonstrate that there was no error, that the error was clearly nonprejudicial to the appellant, or that the error was not one that affected the essential fairness of the adjudication. *Overton*, *supra*.

Although appellants must generally meet these pleading requirements when alleging notification error, the Court has carved out an exception when the appellant asserts that the notification error pertains to VA's failure to provide first-element notification, i.e., notification as to the evidence or information necessary to substantiate his or her claim.  This exception is justified on the grounds that "the substantive nature of that alleged notice error is such that the error, if found, has the natural effect of producing prejudice." *Id.* at 436.  Because an allegation of first-element notice error has the effect of naturally producing prejudice, the Court has previously explained that, even without specifically pleading how he or she was prejudiced, the burden is on the Secretary to demonstrate that there was no error or that the appellant was not prejudiced by any failure to give notice as to this element. *Id.*

### 3. Burdens in the Context of First-Element Notice Error Allegations When the Claim Has Been Substantiated

Here the appellant asserts, and the Court holds, that the Board erred in finding that VA fulfilled its first-element notice obligations. As noted above, after finding error, the burden is on the Secretary to demonstrate that the error was not prejudicial. Here, however, we are confronted with a situation unlike that in our previous cases on this issue. In this case, unlike a case where a claim for service connection has been denied, there was sufficient information and evidence to award service connection and assign an effective date and an initial disability rating–that is, Mr. Dunlap's claim had already been more than substantiated. *See Dingess*, 19 Vet.App. at 490.

Congress has established an adjudicatory scheme to assist and advise claimants throughout the claims process on how to receive the maximum benefit available. Section 5103(a), however, was not intended to fulfill this purpose on its own; rather, this Court and the Federal Circuit have both recognized that, within the VA adjudicatory scheme, section 5103(a) is solely "focused on notice that is required to be provided to a claimant upon receipt of a complete or substantially complete application for benefits and prior to an initial adjudication." *Dingess*, 19 Vet.App. at 490; *see also Mayfield,* 444 F.3d at 1333 ("[S]ection 5103 requires the VCAA notification to be issued prior to the initial decision on the claim, not afterwards."). If a claimant disagrees as to the initial VA determination, other statutory and regulatory provisions, particularly 38 U.S.C. §§ 5104(a), 7105(d)(1), and 5103A, are in place requiring VA to assist and advise a claimant throughout the remainder of the adjudication process.

Based on Congress's intent to create an expeditious decisionmaking process, as well as other statutory and regulatory provisions requiring VA to provide advice and assistance, this Court has concluded that once a claim has been proven–triggering VA to award service connection, and assign a disability rating and an effective date–the claim has been substantiated and the claimant has been provided a meaningful opportunity to participate effectively in the processing of his or her claim. *See Dingess*, 19 Vet.App. at 491 ("In cases where service connection has been granted and an initial disability rating and effective date have been assigned, the typical service-connection claim has been more than substantiated–it has been proven, thereby rendering section 5103(a) notice no longer required because the purpose that the notice is intended to serve has been fulfilled."). Accordingly, the Court concludes that when a first-element notice error occurs and the claim is subsequently

substantiated, the Court will not presume prejudice. Thus, the appellant must demonstrate how the notification error affected the essential fairness of the adjudication. Only then would the Secretary have the burden of demonstrating no prejudice.[1]

### 4. Application

Having concluded that the July 2001 DRO decision awarding service connection and assigning an initial disability rating awarded the benefit sought, we examine whether the appellant has satisfied his burden of demonstrating that he was prejudiced by the failure to give generalized notice as to two elements of the claim–i.e., a disability rating and effective date. The only argument raised in the appellant's pleadings is that the first-element notice error is inherently prejudicial. *See Coker v. Nicholson*, 19 Vet.App. 439, 442 (2006) (appellant must assert with specificity how the lack of notice affected the essential fairness of the adjudication). When additional briefing was requested by the Court, the appellant had the opportunity to present argument that he was prejudiced by VA's notice failure. He did not make such a showing, relying instead on the argument that his NOD created additional claims that required further VCAA notice. We have rejected the latter argument above, and his argument regarding inherent prejudice is unavailing because, as we held above, for a claim that already has been substantiated, the first-element notice error is no longer presumed to be prejudicial. The Court concludes that the appellant has failed to demonstrate that he was prejudiced. Therefore, the Court rejects the appellant's argument for remand.

### C. Appellant's Other Contentions on Appeal

The only other contention raised in Mr. Dunlap's brief is that remand is required on the grounds that the Board erred in prematurely adjudicating his claim for a higher initial rating for his service-connected bipolar condition because such a claim is "inextricably intertwined" with his pending TDIU claim. *See generally Harris v. Derwinski*, 1 Vet.App. 180 (1991). The Court summarily dismisses this argument as meritless. Although Mr. Dunlap is correct that this Court's caselaw may require remand for a TDIU claim where the higher initial rating claim is still before VA, such requirement does not hold true when the situation is reversed. Resolution of the claim for a higher initial disability rating by the Board or this Court is not dependent on VA's adjudication of

---

[1] We do not address prejudice in the context of when VA fails to give tailored section 5103(a) notice upon receipt of an application in which the appellant seeks a specific disability rating. Mr. Dunlap has not asserted such an error.

the TDIU claim.  *See Gurley v. Nicholson*, 20 Vet.App. 573, 576 (2007).  Any argument that VA adjudication of the TDIU claim may be affected by the Court's remand or reversal with respect to the claim for a higher initial rating is of no concern here because we are affirming the Board's rating determination.  Moreover, in the event VA grants the TDIU claim, such action would not render the Court's affirmance of the Board's decision here on appeal meaningless.  Accordingly, we cannot agree with the appellant that remand is required on these grounds.  We will, therefore, affirm the Board's decision.

### III.  CONCLUSION

On consideration of the foregoing, the January 14, 2003, Board decision is AFFIRMED.