Citation Nr: 1438784 
Decision Date: 08/29/14 Archive Date: 09/03/14

DOCKET NO. 00-01 324 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office (RO)
in Detroit, Michigan



THE ISSUE

Entitlement to an initial, compensable rating for the service-connected residuals of a left zygoma fracture.



REPRESENTATION

Appellant represented by: Vietnam Veterans of America



WITNESS AT HEARING ON APPEAL

The Veteran



ATTORNEY FOR THE BOARD

G. E. Wilkerson, Counsel


INTRODUCTION

The Veteran served on active duty from October 1978 to July 1988.

This matter initially came before the Board of Veterans' Appeals (Board) on appeal from an October 1999 rating decisions by the RO.

The Veteran was afforded a hearing before a Decision Review Officer (DRO) at the RO in March 2000. A transcript of the hearing has been associated with the claims file.

In August 2004, November 2010, July 2012 and November 2013, the Board remanded this matter to the RO, via the Appeals Management Center (AMC) for additional development. The case has since returned to the Board for the purpose of appellate disposition. 

For the reasons discussed hereinbelow, the RO is found to have complied with the Board's remand instructions. Stegall v. West, 11 Vet. App. 268, 271 (1998).

In various treatment records and on examination, the Veteran has experiencing ringing in the left ear or tinnitus, associated with his in-service facial injury. As this matter is not currently before the Board, it is referred to the RO for development.

The Veteran has been assigned a total rating based on individual unemployability by reason of service-connected disability, effective on July 12, 2005.

This appeal was processed using the VBMS and Virtual VA paperless claims processing systems. Accordingly, any future consideration of this appellant's case should take into consideration the existence of this electronic record.


FINDING OF FACT

The service-connected the left zygoma fracture residuals is not shown to be productive of malunion or nonunion of the maxilla; other impairment of the maxilla is not shown. 


CONCLUSION OF LAW

The criteria for the assignment of an initial, compensable rating of the service-connected residual of a left zygoma fracture are not met. 38 U.S.C.A. §§ 1155, 5107(b) (West 2002); 38 C.F.R. §§ 4.7, 4.150 including Diagnostic Code 9916.


REASONS AND BASES FOR FINDING AND CONCLUSION

The Veterans Claims Assistance Act

The Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000) (codified at 38 U.S.C.A. §§ 5100 , 5102, 5103, 5103A, 5106, 5107, 5126 (West 2002 & Supp. 2012)) redefined VA's duty to assist the Veteran in the development of a claim. VA regulations for the implementation of the VCAA were codified as amended at 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2013).

Under VCAA,VA must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; (3) that the claimant is expected to provide; and (4) must request that the claimant provide any evidence in his possession that pertains to the claim. Pelegrini v. Principi, 18 Vet. App. 112, 120-21 (2004); 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b).

The United States Court of Appeals for Veterans Claims (Court) has also held that the VCAA notice requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) apply to all five elements of a service connection claim. Those five elements include: 1) Veteran status; 2) existence of a disability; 3) a connection between the Veteran's service and the disability; 4) degree of disability; and 5) effective date of the disability. Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006).

While this claim was initially adjudicated prior to the enactment of VCAA, the claim on appeal arises from the Veteran's disagreement with the rating assigned in connection with the grant of service connection for the disability. 

The courts have held, and VA's General Counsel has agreed, that where an underlying claim for service connection has been granted and there is disagreement as to "downstream" questions, the claim has been substantiated and there is no need to provide additional VCAA notice or prejudice from absent VCAA notice. Hartman v. Nicholson, 483 F.3d 1311, 1314-15 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112, 116-17 (2007); VAOPGCPREC 8-2003 (2003).

The Court has elaborated that filing a Notice of Disagreement begins the appellate process, and any remaining concerns regarding evidence necessary to establish a more favorable decision with respect to downstream elements (such as a disability rating) are appropriately addressed under the notice provisions of 38 U.S.C.A. §§ 5104 and 7105 (West 2002). Goodwin v. Peake, 22 Vet. App. 128, 137 (2008). 

Consequently, further discussion of the VCAA's notification requirements with regard to the claim herein decided is unnecessary.

VCAA also requires VA to make reasonable efforts to help a claimant obtain evidence necessary to substantiate his claims. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159(c), (d). 

This "duty to assist" contemplates that VA will help a claimant obtain records relevant to his claim, whether or not the records are in Federal custody, and that VA will provide a medical examination or obtain an opinion when necessary to make a decision on the claim. 38 C.F.R. § 3.159(c)(4).

In this case, VA obtained the Veteran's service treatment records and all of the identified post-service VA treatment records.

In addition, the Veteran was afforded various VA examinations to determine the nature and severity of the service-connected left zygoma disability, to include in response to the Board's numerous remands. 

As these examinations were based on interview and examination of the Veteran and review of the claims file, and address the Veteran's symptoms in relation to the pertinent rating criteria, they are adequate for adjudication provider. 

The August 2012 VA examiner provided an addendum opinion in May 2014 addressing whether there was any residual disability to the maxilla, as requested in the Board's November 2013 remand. 

Hence, the Board finds that there has been substantial compliance with the November 2031 remand instructions. Stegall, 11 Vet. App. at 271.

For these reasons, the Board finds that VA has complied with the VCAA's notification and assistance requirements.


General Rating Critera

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities (Rating Schedule) and are intended to represent the average impairment of earning capacity resulting from disability. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. Disabilities must be reviewed in relation to their history. 38 C.F.R. § 4.1. 

VA should interpret reports of examination in light of the whole recorded history, reconciling the various reports into a consistent picture so that the current rating may accurately reflect the elements of disability. 38 C.F.R. § 4.2. Any reasonable doubt regarding the degree of disability should be resolved in favor of the claimant. 38 C.F.R. § 4.3. 

Where there is a question as to which of two evaluations apply, the higher of the two should be assigned where the disability picture more nearly approximates the criteria for the next higher rating. 38 C.F.R. § 4.7. 

When considering functional impairment caused by a service-connected disorder, evaluations should be based on an assessment of the lack of usefulness, and adjudicators should consider the effects of the disabilities upon the person's ordinary activity. 38 C.F.R. § 4.10. See also Schafrath v. Derwinski, 1 Vet. App. 589 (1991). 

In order to evaluate the level of disability and any changes in condition, it is necessary to consider the complete medical history of a veteran's disability. Schafrath, 1 Vet. App. at 594. 

In general, the degree of impairment resulting from a disability is a factual determination and generally the Board's primary focus in such cases is upon the current severity of the disability. Francisco v. Brown, 7 Vet. App. 55, 57-58 (1994); Solomon v. Brown, 6 Vet. App. 396, 402 (1994). 

The Board also acknowledges that a claimant may experience multiple distinct degrees of disability that might result in different levels of compensation at any stage since the effective date of service connection. See Fenderson v. West, 12 Vet. App 119 (1999); see also Hart v. Mansfield, 21 Vet. App. 505 (2007). 

The analysis is undertaken with consideration of the possibility that different ratings may be warranted for different time periods. 

Ratings shall be based as far as practicable, upon the average impairments of earning capacity with the additional proviso that the Secretary shall from time to time readjust this schedule of ratings in accordance with experience. 

To accord justice, therefore, to the exceptional case where the schedular evaluations are found to be inadequate, the Under Secretary for Benefits or the Director, Compensation and Pension Service, upon field station submission, is authorized to approve on the basis of the criteria set forth in this paragraph an extraschedular evaluation commensurate with the average earning capacity impairment due exclusively to the service-connected disability or disabilities. 

The governing norm in these exceptional cases is: A finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards. 38 C.F.R. § 3.321(b)(1).


Analysis

The Veteran seeks a compensable rating for his service-connected left zygoma fracture residuals.

The residuals of the left zygoma fracture is currently rated under Code 9916 (for malunion of the maxilla). 

Under Diagnostic Code 9916, malunion or nonunion of the maxilla warrants a 10 percent rating for moderate displacement and a 30 percent rating for severe displacement.

The evidence of record includes a March 1996 VA dental treatment records indicating that the Veteran underwent extraction of tooth number 18. 

In September 1996, the Veteran complained of pain in the back left side of the mouth and pain around the left ear when chewing. He was treated conservatively for temporomandibular joint disorder (TMJ)/masseter tenderness.

A February 1999 VA examination report reflected that the Veteran noted an initial injury to the face and surgical repair for fracture of the facial bones and maxillary sinus in 1988. Objectively, there were no visible scars of the face. The X-ray studies revealed suture material over the left maxillary sinus walls in the mid-portion and inferior aspect consistent with the previously described facial bone fracture and surgical intervention. 

An impression of post-surgical changes of the left maxillary area and prominence of the nasal turbinates was noted. A diagnosis of history of post-traumatic facial bone fracture in 1988, status post left maxillary sinus surgery was reported. 

During the Veteran's March 2000 DRO hearing, he testified that he experienced pain on the left side of his face and headaches, as well as numbness sometimes around his nose and left cheekbone. He indicated that he was not told that he had TMJ.

On VA examination in May 2000, the Veteran reported sustaining fractures of his wrists and a kidney injury and also injured his face during service. Since the injury, he had noted numbness in the left upper lip, left face and temple. He indicated that he experienced some difficulty in eating because of the feeling of numbness. After examination, the examiner diagnosed neuropathy, partial sensory, only second division fifth cranial nerve left.

On dental examination, the Veteran reported having a medical history of altered sensation of the face. With respect to functional impairment, the Veteran reported that headaches were his chief complaint. The examiner noted that the Veteran was missing teeth 16, 17, and 18 with no need for replacement. Right and left lateral and protrusive excursion of the mandible were normal. There was no loss of mandible, maxilla or hard palate. There was no mandibular displacement. Teeth numbered 18 and 32 were in need of restoratives. An x-ray study revealed wire ligature of the left infra-orbital and left posterior muco-buccal fold. The examiner noted that the fracture of the left zygoma had healed. A diagnosis of hypesthesia of the left trigeminal nerve and lost restoratives of teeth numbered 19 and 32 was assigned. 

A May 2000 VA dental report reflected that the Veteran currently had hypesthesia of the trigeminal nerve. He also complained of headaches. 

At a VA examination in February 2007, the Veteran reported injuring his left jaw in service when he fell from the third floor of an apartment complex. He had minimal numbness of the left cheek area since that time. He stated that he underwent an operation on the left jaw in service. He denied having any other frequent cranial nerve problems or paralysis. He reported experiencing minimal loss of sensation over the left cheek area, medially and near the nose, since the injury and surgery. He added that there was not much local pain, local atrophy, wasting of the muscles, or drooping of the face.

Objectively, there was no obvious wasting of the facial muscles, fasciculation or atrophy of the facial muscles. There was no obvious drooping of the angle of the month. Sensation including monofilament touch sensation was diminished over the left check, especially in the medial aspects near the nose (maxillary nerve distribution). Sensation was intact in other parts of the face. There was no obvious wasting of the facial muscles. Muscle power appeared normal. Other cranial nerves II-XII were intact. There were no other focal neurological signs. 

An assessment of residual partial left trigeminal paresis, status post 1988 injury, was noted. The examiner determined that this and other medical problems stemming from the 1988 injuries did not likely prevent him from performing his daily route activities and sedentary jobs. 

On VA dental examination in August 2012, the Veteran reported that he was injured when he fell from the third floor of an apartment complex. He fractured his zygoma, received ligature wire and had some slight numbness. The Veteran stated that he experienced headaches on occasion and experienced ringing of the ear on the left side. 

Objectively, the examiner indicated that the Veteran's oral hygiene was fair with no apparent lesions or pathologies. There was popping when opening, but no clicking. The examiner found no evidence of any loss of the mandible or maxilla. There was no loss of teeth due to loss of substance of the body of the maxilla or mandible. Though the Veteran had missing teeth, the examiner indicated that there was no loss of teeth due to trauma or disease such as osteomyelitis. There were no disfiguring scars of the mouths, lips, or tongue. 

The X-ray studies were noted to show that the Veteran had ligature wire located in the area of the sinus on the left side orbital with posterior muco-buccal fold side. 

The examiner indicated that the Veteran had not been diagnosed with an oral or dental condition, to include loss of any portion of the mandible or maxilla, malunion or nonunion of the mandible or maxilla, loss of teeth, or TMJ. 

In sum, the examiner noted that the Veteran had some discomfort due to fracture of the left zygoma, with some hyperthesia to the left side. 

In May 2014 addendum opinions, the examiner noted that the April 1988 treatment report revealed that the patient received injuries during his active duty. He noted that these records reflected that there was overlap of the inferior bones of the maxillary sinuses on the film submitted for interpretation. The pan x-ray study revealed that upper left side of the sinus and zgyomatic was wired in two locations, superior and inferior to the fracture site. 

The examiner noted that a review of the claims file revealed that the fracture was repaired. As far as displacement, he indicated that there was no displacement given that the information only reflected repaired.

Based on review of the above evidence, the Board concludes that an initial, compensable rating for the service-connected residuals of the left zygoma fracture is not warranted. 

The examination reports do not reflect that the left zygoma fracture in service resulted in current displacement of the maxilla. In fact, on examinations in 2000 and 2012, no impairment of the maxilla was found. 

The 2012 VA examiner specifically commented in a May 2014 addendum opinion that, after review of the records, he saw no evidence of displacement of the maxilla as a result of the 1988 injury, only repair. 

Accordingly, a compensable rating under Diagnostic Code 9916 for moderate displacement of the maxilla is not warranted. 

The Board has also considered the applicability of any other diagnostic codes, but also has determined that the Veteran has not been diagnosed with any other dental or oral condition warranting a compensable rating. 

In the absence of osteomyelitis, loss or malunion/nonunion of the mandible or maxilla, or loss of teeth due to loss of substance of the body of the maxilla or mandible, limitation of temporomandibular articulation, loss of the ramus, or other related disability, consideration under diagnostic codes 9900-9915 is not warranted. See 38 C.F.R. § 4.150, Diagnostic Codes 9900-9915.

In addition, the Board notes that the Veteran has already been assigned a separate 10 percent rating for the resulting facial hyperthesia associated with the left zygoma fracture and repair. 

Furthermore, to the extent that the Veteran complains of headaches and temporomandibular joint symptoms, such complaints have been addressed in a prior rating decision that denied service connection for migraines and TMJ. These matters are not currently before the Board. 

The above determinations are based upon application of the pertinent provisions of VA's rating schedule. The Board finds that the record does not reflect that the service-connected left zygoma fracture is exceptional or unusual as to warrant the assignment of a higher rating on an extraschedular basis. See 38 C.F.R. § 3.321(b)(1). 

The threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. See Thun v. Peake, 22 Vet. App. 111 (2008).

 In this regard, there must be a comparison between the level of severity and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability. 

If the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule and the assigned schedular evaluation is therefore adequate, and no extraschedular referral is required. Id., see also VAOGCPREC 6-96 (Aug. 16, 1996). 

Otherwise, if the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, VA must determine whether the claimant's exceptional disability picture exhibits other related factors, such as those provided by the extraschedular regulation (38 C.F.R. § 3.321(b)(1)) as "governing norms" (which include marked interference with employment and frequent periods of hospitalization). 

The Board finds that the rating criteria used to evaluate the service-connected left zygoma fracture reasonably describe his disability level and symptomatology. 

There is nothing in the record to distinguish his case from the cases of other veterans who are subject to the schedular rating criteria for the same disability. 

Moreover, the schedular criteria, in general, are considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disabilities. 38 C.F.R. § 4.1.

For all the foregoing reasons, the Board concludes that an initial, compensable rating for the service-connected residuals of the left zygoma fracture must be denied. 


ORDER


An increased initial, compensable rating for the service-connected residuals of the left zygoma fracture is denied.



____________________________________________
STEPHEN L. WILKINS
Veterans Law Judge, 
Board of Veterans' Appeals



Department of Veterans Affairs