Citation Nr: 1527827 
Decision Date: 06/29/15 Archive Date: 07/09/15

DOCKET NO. 06-25 143A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Philadelphia, Pennsylvania


THE ISSUE

Entitlement to an initial rating higher than 40 percent for a right elbow disability (residuals of radial head resection with lateral epicondylitis and traumatic arthritis) prior to January 23, 2006, and as of March 1, 2006.


REPRESENTATION

Appellant represented by: The American Legion


ATTORNEY FOR THE BOARD

Bridgid D. Houbeck, Counsel


INTRODUCTION

The Veteran served on active duty from July 1998 to June 2001.

This matter has come before the Board of Veterans' Appeals (Board) on appeal from a December 2005 rating decision of the Philadelphia, Pennsylvania, Department of Veterans Affairs (VA) Regional Office (RO), which, in relevant part, granted service connection for residuals of radial head resection with lateral epicondylitis and traumatic arthritis and assigned an initial 10 percent rating effective September 7, 2004. In January 2006, the Veteran filed a notice of disagreement with that initial rating.

In a March 2006 rating decision, the Veteran's rating for residuals, radial head resection, right elbow with lateral epicondylitis and traumatic arthritis (major) was increased to 40 percent effective September 7, 2004, with a temporary total rating of 100 percent based on surgical treatment necessitating convalescence effective January 23, 2006, through February 28, 2006. Inasmuch as a higher rating is available for this service-connected condition than that assigned in the March 2006 rating decision, and as a claimant is presumed to be seeking the maximum available benefit for a given disability, the claim for a higher rating as reflected on the title page remains viable on appeal. See AB v. Brown, 6 Vet. App. 35, 38 (1993). This rating decision also denied entitlement to total disability rating based on individual unemployability due to service-connected disabilities (TDIU)

In September 2010, the Board remanded the issues of a higher initial rating for right elbow disability and entitlement to TDIU for further development.

In a February 2012 decision, the Board denied the Veteran's claim for a higher initial rating for right elbow disability and remanded the TDIU claim.

The Veteran appealed the denial of his claim for claim for a higher initial rating for right elbow disability to the U.S. Court of Appeals For Veterans Claims (Court). In a July 2013 memorandum decision, the Court vacated the February 2012 Board decision and remanded the case to the Board for further appellate review.

In a July 2013 rating decision, which was issued one day prior to the Court decision but was not part of the Court's records at that time, the Veteran was awarded service connection for right cubital and radial tunnel syndrome, supination and pronation impairment of the right elbow, and limitation of flexion of the right forearm. This rating decision also granted TDIU effective November 27, 2012. To the extent that the Court decision instructed the Board to consider whether right forearm, wrist, and hand difficulties are residual to his service-connected right elbow disability, this rating decision grants service connection for these symptoms and renders those instructions moot. Moreover, the Veteran did not appeal the initial ratings awarded for those conditions.

In November 2014, the Board remanded this case for further development.


FINDING OF FACT

Prior to January 23, 2006, and as of March 1, 2006, the Veteran's right elbow symptoms that are not already compensated under another diagnostic code include nonunion of the upper half of the ulna, instability, a noncompensable degree of limitation of extension, and well-healed surgical scars.


CONCLUSION OF LAW

Prior to January 23, 2006, and as of March 1, 2006, the criteria for an initial rating higher than 40 percent for right elbow disability are not met. 38 U.S.C.A. § 1155 (2014); 38 C.F.R. § 4.71a, Diagnostic Codes (DC) 5205, 5207, 5210, 5211 (2014).


REASONS AND BASES FOR FINDING AND CONCLUSION

Duties to Notify and Assist

Under the Veterans Claims Assistance Act of 2000 (VCAA), VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a) (2014).

Proper notice from VA must inform the claimant of any information and medical or lay evidence not of record that is necessary to substantiate the claim; that VA will seek to provide; and that the claimant is expected to provide. 38 C.F.R. § 3.159(b)(1); Quartuccio v. Principi, 16 Vet. App. 183 (2002). Additionally, this notice must include information that a disability rating and an effective date for the award of benefits will be assigned if service connection is awarded. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473, 486 (2006).

The Veteran's claim arises from an appeal of the initial evaluation following the grant of service connection. Once service connection is granted the claim is substantiated, and additional notice is not required as any defect in the notice is not prejudicial. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007). Therefore, no further notice is needed under VCAA.

Next, VA has a duty to assist the Veteran in the development of the claim, which includes assisting in the procurement of service treatment records and pertinent treatment records and, when necessary, providing an examination. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159.

The Board finds that all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the appellant. See Bernard v. Brown, 4 Vet. App. 384 (1993). The claims file contains the Veteran's service treatment records, as well as post-service reports of treatment and examination. Moreover, his statements in support of the claim are of record. The Board has carefully reviewed such statements and concludes that no available outstanding evidence has been identified. The Board has also perused the medical records for references to additional treatment reports not of record, but has found nothing to suggest that there is any outstanding evidence with respect to the Veteran's claim.

In compliance with the Board's September 2010 remand, VA obtained additional treatment records and provided the Veteran with October 2010 and April 2013 medical examinations. These examinations contained all information needed to rate the disability. The examiners reviewed the objective evidence of record, documented the Veteran's current complaints, and performed a thorough clinical evaluation. Therefore, they are adequate for VA purposes. Similarly, in compliance with the Board's November 2014 remand, VA obtained additional VA treatment records and sent the Veteran a February 2015 letter asking him to identify any additional treatment records related to this disability and to either submit those records of complete and return authorization to obtain them. The Veteran did not identify any additional records and instead submitted a waiver of the 30 day waiting period in March 2015. Thus VA has complied with the September 2010 and November 2014 remand instructions. Stegall v. West, 11 Vet. App. 268 (1998).

For the above reasons, no further notice or assistance to the appellant is required to fulfill VA's duty to assist the appellant in the development of the claim. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd, 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001); see also Quartuccio v. Principi, 16 Vet. App. 183 (2002).

Initial Rating - Right Elbow Disability

The Veteran's initial rating for residuals of radial head resection status post with lateral epicondylitis and traumatic arthritis is 40 percent effective September 7, 2004, to January 23, 2006, and as of March 1, 2006. See March 2006 rating decision. The Veteran underwent right elbow debridement, capitellum microfracture, and lateral collateral ligament repair on January 23, 2006, and, as a result, was awarded a temporary 100 percent rating based on surgical treatment necessitating convalescence. The rating then returned to 40 percent on March 1, 2006.

The record shows that the Veteran is right hand dominant, so this is a disability of his major extremity.


Disability ratings are assigned in accordance with the VA's Schedule for Rating Disabilities and are intended to represent the average impairment of earning capacity resulting from disability. 38 U.S.C.A. § 1155. Where the question for consideration is the propriety of the initial rating assigned, evaluation of the medical evidence since the effective date of the grant of service connection, and consideration of the appropriateness of "staged rating" (i.e., assignment of different ratings for distinct periods of time, based on the facts found) is required. Fenderson v. West, 12 Vet App 119, 125-26 (1999).

Currently, the Veteran is rated under hyphenated Diagnostic Code (DC) 5010-5211. Hyphenated diagnostic codes are used when a rating under one diagnostic code requires the use of an additional diagnostic code to identify the basis for the rating assigned; the additional code is shown after the hyphen. 38 C.F.R. § 4.27.

DC 5010 provides criteria for evaluating traumatic arthritis by rating based on the criteria for degenerative arthritis under DC 5003. 38 C.F.R. § 4.71a. Specifically, this diagnostic code allows compensation of arthritis established by x-ray findings to be rated either based on the limitation of motion of the affected joint or based on x-ray findings. 38 C.F.R. § 4.471a, DC 5003. Ratings based on x-ray findings will not be combined with ratings based on limitation of motion. 38 C.F.R. § 4.71a, DC 5003, Note 1.

Limitation of motion of the elbow is rated under DC 5205 for ankylosis, DCs 5206-5207 for limitation of flexion and/or extension, and DC 5213 for limitation of supination and pronation.

The normal range of motion for the elbow is flexion to 145 degrees, extension to zero degrees, pronation to 80 degrees, and supination to 85 degrees. 38 C.F.R. § 4.71, Plate I.

For disabilities evaluated on the basis of limitation of motion, VA is required to apply the provisions of 38 C.F.R. §§ 4.40, 4.45, pertaining to functional impairment. The Court has instructed that in applying these regulations VA should obtain examinations in which the examiner determines whether the disability is manifested by weakened movement, excess fatigability, incoordination, or pain. Such inquiry is not to be limited to muscles or nerves. These determinations are, if feasible, to be expressed in terms of the degree of additional range-of-motion loss due to any weakened movement, excess fatigability, incoordination, flare-ups, or pain. DeLuca v. Brown, 8 Vet. App. 202 (1995); see also Mitchell v. Shinseki, 25 Vet. App. 32 (2011); Johnston v. Brown, 10 Vet. App. 80, 84-5 (1997); 38 C.F.R. § 4.59.

Under Diagnostic Code (DC) 5211, impairment of the ulna of the major arm with malunion and bad alignment warrants a 10 percent rating; with nonunion in lower half with false movement warrants a 20 percent rating; with nonunion in upper half with false movement without loss of bone substance or deformity warrants a 30 percent rating; and nonunion in upper half with false movement with loss of bone substance (1 inch (2.5 cm.) or more) and marked deformity warrants a 40 percent rating. Id. Thus, the Veteran's current rating is the maximum schedular rating available under this diagnostic code.

A higher rating of 50 percent is available under DC 5210 for nonunion of the radius and ulna with flail false joint of the major arm. 38 C.F.R. § 4.71a.

Symptoms

The Veteran's right radial head was excised during service, following a radial fracture of the right elbow. X ray evidence confirms the removal of the radial head of the right elbow. At no time during the appeals period was there x-ray evidence of fracture or deformity. See e.g., April 2005 x-ray, December 2005 private MRI, December 2009 x-ray, and April 2013 examination.

Throughout the appeals period, the Veteran has reported pain and painful motion associated with his right elbow disability. He was treated with steroid injections and a right elbow support. 

His range of motion for the right elbow was generally noted to be full or nearly full with his flexion limited to no less than 125 degrees, as noted in the private treatment record dated May 2005. He also generally had full extension except for a private physical therapy record dated March 2006, which found limitation of extension to 30 degrees and a March 2006 VA treatment record showing limitation of extension to 10 degrees. The Veteran's range of right elbow pronation was full until the October 2010 VA examination that noted limitation of pronation to 80 degrees and then further limitation at the time of the April 2013 examination with motion lost beyond the middle of the arc. In a December 2012 disability based questionnaire the Veteran was noted to have impairment of pronation or supination described as "weakness." There were notations of pain, but not limitation of motion with regard to the Veteran's right elbow supination. Repetitive testing resulted in additional pain and subjective complaints of fatigue, but no additional functional loss. See June 2005, October 2007, and October 2010 VA examinations. Additionally, the October 2007 VA examiner noted poor endurance due to pain. The April 2013 VA examination noted objective evidence of pain throughout his range of flexion, but the Veteran still had 140 degrees of flexion after repetitive testing.

There is no record of ankylosis of his right elbow at any time during the appeals period. Likewise there is no evidence of flail false joint. See December 2012 disability based questionnaire and April 2013 VA examination.

The Veteran's right elbow disability was not characterized by erythema or warmth. Similarly, the only objective reports of swelling in his right elbow were a record immediately following his additional injury in December 2009 wherein the Veteran fell off a motorcycle, injuring his right elbow and a private treatment record dated October 2012. Subjectively, the Veteran reported swollen elbows in his April 2006 social Security Administration (SSA) Physical Residual Functional Capacity Assessment. He reported occasional stiffness. See May 2005 private record. Additionally, the Veteran complained of right elbow instability.

Neurologically, he reported burning sensations, tingling and numbness of the arm, hand, and fingers, especially when typing or writing. He was diagnosed with right radial tunnel syndrome and right cubital tunnel syndrome.

Functionally, the Veteran reported weakened grip strength, difficulty lifting, pushing, and pulling. See e.g., May 2005 treatment record. His grip strength testing results were inconsistent. Compare May 2005 consultation report with June 2005 VA examination. He reported increased pain with overhead activities like reaching and combing. See June 2005 VA examination. In his April 2006 SSA Physical Residual Functional Capacity Assessment, the Veteran reported difficulty driving because his car had manual transmission and no power steering. The February 2013 and April 2013 VA examiners specifically found that this disability did not result in functional impairment of the right elbow such that no effective function remained beyond that which would be equally well served by an amputation with prosthesis.

A private physical therapy record dated March 2006 noted a discrepancy in girth measurements with the right being smaller by 2.3 cm when measured 16 cm superior to the ulnar stylus. The remainder of the record, however, consistently denies any findings of atrophy. See e.g., April 2013 VA examination. The October 2007 and April 2013 VA examiners found some decrease in muscle strength, specifically in elbow flexion. Additionally, the April 2013 examination notes the Veteran's refusal to perform strength testing in extension due to concerns about "floating bones" that physically move to the outer flesh with loading elbow in that manner. 

The June 2005 VA examiner noted that acute exacerbations of right elbow pain would result in additional limitations, but did not quantify these additional limitations beyond noting that they would be based on the severity of the pain. At the time of his October 2010 VA examination, the Veteran reported mild flare-ups every two days, lasting for a few hours. Similarly, on his December 2012 disability based questionnaire, he reported flare-ups of difficulty using his right arm. Oddly, at the time of his April 2013 VA examination, the Veteran denied flare-ups impacting the function of his elbow and/or forearm.

Occupationally, the Veteran reported that he had initially tried to pursue a career in law enforcement, but was unable to maintain control of a firearm because of his disability and associated pain. The Veteran had reported being unemployed at the time of his June 2005 VA examination. That examiner noted that the reasons for unemployment were not very clear and the Veteran's current right elbow function was not interfering with his sedentary activities. The record shows that the Veteran was on medical leave at the time of that examination. Then, after exhausting his medical leave, he was terminated from his employment on August 22, 2005. He later described that position as clerical and labor. See May 2006 VA Form 21-8940. In a December 2006 decision, the Social Security Administration (SSA) awarded a closed period of disability from May 4, 2005 through September 15, 2006, noting that the Veteran returned to full-time work without significant medical restrictions on September 16, 2006. It appears that the Veteran continued to work in various positions until November 2012. In a private treatment record dated November 2012, the Veteran stated that he had been laid off from work for failing to pass a required CPR course, which he attributed this failure to his inability to perform chest compressions due to his right wrist pain. This employer did not provide a reason for the termination of the Veteran's employment on their March 2013 VA Form 21-4192. The Veteran's current award of TDIU began on November 27, 2012, his reported last day worked. Later medical records confirm his unemployability.

Additionally, the Veteran had well-healed surgical scars, but they were not painful, unstable, or larger than 39 sq. cm. See e.g., private treatment record dated May 2005, December 2012 disability based questionnaire, April 2013 VA examination.

Analysis

As noted in the introduction, the July 2013 rating decision granted service connection for additional associated disabilities. The Veteran was granted service connection for right cubital and radial tunnel syndrome with symptoms of moderate incomplete paralysis of his right upper extremity, which was rated under DC 8513 for all radicular groups. He was granted service connection for supination and pronation impairment of the right elbow due to limitation of pronation under DC 5213. He was granted service connection for limitation of flexion of the right forearm due to painful motion of the elbow under DC 5206. As these right upper extremity symptoms are already subject to compensation, to award an additional rating for the same symptom would violate the rule against pyramiding. See 38 C.F.R. §§ 4.14. Again, the Veteran did not appeal these initial ratings and so they are not before the Board. Thus, the Board will address the Veteran's remaining symptoms within the context of this claim for a higher initial rating for right elbow disability.

Based on the above, the Veteran's remaining symptoms include nonunion of the upper half of the ulna, instability, limitation of extension, and surgical scar. The symptoms of nonunion of the upper half of the ulna and instability are consistent with his current rating. See 38 C.F.R. § 4.71a, DC 5211. As there is no evidence of false flail joint, a higher rating under DC 5210 is not warranted. See 38 C.F.R. § 4.71a.

The Board has also considered whether the Veteran's remaining symptoms of limitation of extension and surgical scar warrant additional separated ratings. Ultimately, the Veteran's these symptoms do not rise to the level of a compensable separate rating. There are some reports of limitation of extension of the forearm with the most severe limitation of record being the March 2006 physical therapy record showing limitation of extension to 30 degrees. However, there is no evidence suggesting extension limited to 45 degrees or more as required for a compensable rating under DC 5207. See 38 C.F.R. § 4.71a. Likewise, the associated surgical scar of the right elbow does not warrant a separate compensable evaluation. This scar is not on the Veteran's head, face or neck, therefore evaluation under DC 7800 for disfigurement of the head, face, or neck is not warranted. See 38 C.F.R. § 4.118. Therefore, in order to warrant a compensable evaluation, the Veteran's scar must be characterized as deep or cause limited motion in an area or areas exceeding 6 square inches (DC 7801); superficial in an area or areas of 144 square inches or greater (DC 7802); superficial and unstable (DC 7803); or superficial and painful on examination (DC 7804). 38 C.F.R. § 4.118. All other scars are rated on limitation of function of affected part. 38 C.F.R. § 4.118, DC 7805. In this case, the associated scar was superficial and did not interfere with function. It was 3 inches long and not painful. As such, the Board finds no basis upon which to award a separate disability evaluation for the Veteran's associated scar. Therefore, separate compensable ratings are not warranted for the Veteran's limitation of extension and surgical scar.

Based on the above, the Veteran's right elbow disability does not warrant an initial rating higher than the current 40 percent assigned. 38 C.F.R. § 4.7. As such, this claim is denied.

Extraschedular Considerations and TDIU

The Board must also determine whether the schedular evaluation is inadequate, thus requiring that the RO refer a claim to the Chief Benefits Director or the Director, Compensation Service, for consideration of "an extra-schedular evaluation commensurate with the average earning capacity impairment due exclusively to the service-connected disability or disabilities." 38 C.F.R. § 3.321(b)(1).

Consideration for an extra-schedular evaluation is warranted when a service-connected disability presents an exceptional or unusual disability picture, meaning that the diagnostic criteria do not reasonably describe or contemplate the severity and symptomatology. Thun v. Peake, 22 Vet. App. 111, 115 (2008). If there is an exceptional or unusual disability picture, then the Board must consider whether the disability picture exhibits other factors such as marked interference with employment or frequent periods of hospitalization. Id. at 115-116. If either of those elements is satisfied, then the appeal must be referred for consideration of the assignment of an extraschedular rating. Otherwise, the schedular evaluation is adequate, and referral is not required. 38 C.F.R. § 3.321(b)(1); Thun, 22 Vet. App. at 116.

In this case, the schedular evaluation is not inadequate. An evaluation in excess of that assigned is provided for certain manifestations of the service-connected disability, but the medical evidence reflects that those manifestations are not present in this case. Additionally, the diagnostic criteria adequately describe the severity and symptomatology of the Veteran's disorder. Furthermore, he is in receipt of separate disability ratings for additional right upper extremity symptoms. As the rating schedule is adequate to evaluate the disabilities, referral for extraschedular consideration is not in order.

Finally, the Board notes that under Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014), a Veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected disabilities experienced. However, in this case, after applying the benefit of the doubt under of Mittleider v. West, 11 Vet. App. 181 (1998), there are no additional service-connected symptoms that have not been attributed to a specific service-connected disability. Accordingly, this is not an exceptional circumstance in which extraschedular consideration may be required to compensate the Veteran for a disability that can be attributed only to the combined effect of multiple conditions. 

As noted above, the Veteran is currently in receipt of TDIU effective November 27, 2012. The Board has also considered whether the record suggest entitlement to TDIU at any other point during the appeals period.

Generally, the Veteran was employed during this period prior to November 27, 2012. The exception is the period from May 4, 2005, to September 16, 2006, which coincides with his closed period of disability from SSA. The Veteran was in receipt of a temporary total rating due to surgical convalescence during part of this period, which already recognizes the Veteran's inability to work due to this disability. During the remainder of this time, his combined disability rating was only 50 percent, which does not meet the threshold percentages required for TDIU under 38 C.F.R. § 4.16(a).

Nevertheless, the claim may still be referred to the Director, Compensation Service, for consideration of an extraschedular rating if the evidence of record shows that the Veteran was "unable to secure and follow a substantially gainful occupation by reason of service-connected disability[y]" during this period. 38 C.F.R. § 4.16(b). In this case, however, the record does not show that the Veteran's right elbow disability rendered him unemployable. Instead, the June 2005 VA examiner specifically found that the reasons for the Veteran's unemployment were unclear as his right elbow function was not interfering with sedentary activities. The record does not otherwise contain medical evidence attributing this period of unemployment to his service connected disability. As such, the weight of the evidence is against finding that the Veteran was unable to secure or follow a substantially gainful occupation as a result of his service-connected right elbow disability during this period. As such, the Board finds no basis upon which to refer the claim to the Director, Compensation Service for consideration of an extraschedular rating. Accordingly, an award of TDIU is not warranted.


ORDER

An initial rating higher than 40 percent for a right elbow disability prior to January 23, 2006, and as of March 1, 2006, is denied.




____________________________________________
J. A. MARKEY
Veterans Law Judge, Board of Veterans' Appeals
Department of Veterans Affairs