Citation Nr: 1532798 
Decision Date: 07/31/15 Archive Date: 08/05/15

DOCKET NO. 14-21 370 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Roanoke, Virginia


THE ISSUES

1. Entitlement to an initial compensable rating for bilateral hearing loss, prior to December 30, 2014.
 
2. Entitlement to a rating in excess of 10 percent for bilateral hearing loss, from December 30, 2014.


REPRESENTATION

Appellant represented by: Virginia Department of Veterans Services


ATTORNEY FOR THE BOARD

M.H. Stubbs, Counsel



INTRODUCTION

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a February 2014 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Roanoke, Virginia, which granted entitlement to service connection for bilateral hearing loss and provided an initial noncompensable (zero percent) rating.

 The February 2014 rating decision additionally denied entitlement to service connection for tinnitus. However, on his March 2014 notice of disagreement, the Veteran specifically only disagreed with the rating assigned for his bilateral hearing loss. Subsequently, in a January 2015 rating decision, he was granted entitlement to service connection for tinnitus.

This claim was previously before the Board in October 2014 and April 2015. The Board remanded the claims in October 2014 to request that the Veteran provide releases for private medical records referred to in his notice of disagreement, and in April 2015 for interpretation of graphical data and information on speech testing. The directives have been completed, and the claims were returned to the Board.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). 38 U.S.C.A. § 7107(a)(2) (West 2014).

The issue(s) of entitlement to a rating in excess of 10 percent for bilateral hearing loss, from December 30, 2014 is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. Audiometric examinations correspond to at worst level III hearing loss in his right ear and level III hearing loss in his left ear. 

2. The Veteran's hearing loss disability does not present an exceptional or unusual disability picture.


CONCLUSIONS OF LAW

1. A compensable disability rating is not warranted. 38 U.S.C.A. § 1155 (West 2002 & Supp. 2014); 38 C.F.R. §§ 4.1, 4.85, Diagnostic Code 6100, 4.85, 4.86 (2014).
 
2. Application of the extraschedular rating provisions is not warranted in this case. 38 C.F.R. §§ 3.321(b), 4.86.


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

VA has met all statutory and regulatory notice and duty to assist provisions. See 38 U.S.C.A. §§ 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.159, 3.326. 

In this case, the Veteran is challenging the initial evaluation assigned following the grant of service connection for his bilateral hearing loss disability. In Dingess v. Nicholson, 19 Vet. App. 473 (2006), the Court held that in cases where service connection has been granted and an initial disability rating and effective date have been assigned, the typical service-connection claim has been more than substantiated, it has been proven, thereby rendering section 5103(a) notice no longer required because the purpose that the notice is intended to serve has been fulfilled. See also VAOPGCPREC 8- 2003 (December 22, 2003). Thus, because service connection has already been granted, VA's notice obligations with respect to the issue of entitlement to a higher initial evaluation for bilateral hearing loss disability are fully satisfied, and any defect in the notice is not prejudicial. See Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007). In any event, the Board notes that the RO provided the Veteran with adequate notice in July 2013 letter.

VA has met its duty to assist the Veteran in the development of the claim. The Veteran's treatment records, examinations and statements have been obtained in the development of the claim. 38 U.S.C.A § 5103A, 38 C.F.R. § 3.159. The Veteran has indicated in his notice of disagreement that he has undergone private hearing tests for his employment; however, attempts by the VA (November 2014 letter) to have the Veteran provide this medical evidence or releases for this medical evidence have gone unanswered. 

The RO provided the Veteran with appropriate VA audiology examinations in August 2013 and December 2014. The examination reports include sufficient findings to rate the Veteran's hearing loss disability under the appropriate rating criteria. In evaluating the adequacy of the examination report, the Board observes that in Martinak v. Nicholson, 21 Vet. App. 447 (2007), the Court of Appeals for Veterans Claims (Court) noted that VA had revised its hearing examination worksheets to include the effect of the Veteran's hearing loss disability on occupational functioning and daily activities. See Revised Disability Examination Worksheets, Fast Letter 07-10 (Dep't of Veterans Affairs Veterans Apr. 24, 2007); see also 38 C.F.R. § 4.10 (2012). In the present case, both examiners elicited information from the Veteran concerning the functional effects of his disability, and the Veteran has not identified any evidence in the record indicating that there was any prejudice as a result of the examination. Martinak¸ 21 Vet. App. at 455-56. Thus, the Board concludes that the examination report is adequate for purposes of rendering a decision in the instant appeal. See 38 CF.R. § 4.2; see also Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). In addition, the Board notes that the Veteran's claim for an increased rating after December 30, 2014 is being remanded for additional development, as the June 2015 VA examination was cancelled, but without a discernable reason. The evidence prior to December 30, 2014 is adequate to determine the Veteran's disability severity for that time period, and would not be impacted by any future examination findings of hearing loss severity. 

Additionally, there is no indication in the record that any additional evidence, relevant to the issue decided, is available and not part of the claims file. See Pelegrini v. Principi, 18 Vet. App. 112 (2004). As there is no indication that any failure on the part of VA to provide additional notice or assistance reasonably affects the outcome of the case, the Board finds that any such failure is harmless. See Mayfield v. Nicholson, 20 Vet. App. 537 (2006); see also Dingess/Hartman, 19 Vet. App. at 486; Shinseki v. Sanders/Simmons, 129 S. Ct. 1696 (2009).

Initial Increased Rating

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities (Rating Schedule) and are intended to represent the average impairment of earning capacity resulting from disability. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. Separate diagnostic codes identify the various disabilities. Disabilities must be reviewed in relation to their history. 38 C.F.R. § 4.1. Other applicable, general policy considerations are: interpreting reports of examination in light of the whole recorded history, reconciling the various reports into a consistent picture so that the current rating may accurately reflect the elements of disability, 38 C.F.R. § 4.2; resolving any reasonable doubt regarding the degree of disability in favor of the claimant, 38 C.F.R. § 4.3; where there is a question as to which of two evaluations apply, assigning a higher of the two where the disability picture more nearly approximates the criteria for the next higher rating, 38 C.F.R. § 4.7; and, evaluating functional impairment on the basis of lack of usefulness, and the effects of the disability upon the person's ordinary activity, 38 C.F.R. § 4.10. See Schafrath v. Derwinski, 1 Vet. App. 589 (1991).

Where entitlement to compensation has already been established and an increase in the disability rating is at issue, it is the present level of disability that is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). In addition, an appeal from the initial assignment of a disability rating, as is the case, requires consideration of the entire time period involved, and contemplates "staged ratings" where warranted. See Fenderson v. West, 12 Vet. App. 119 (1999). However, "staged ratings" are appropriate for an increased rating claim when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. Hart v. Mansfield, 21 Vet. App. 505 (2007).

Hearing loss is rated based on 38 C.F.R. § 4.85, Diagnostic Code 6100, which provides criteria for evaluating hearing impairment using puretone threshold averages and speech discrimination scores. Numeric designations are assigned based upon a mechanical use of tables found in 38 C.F.R. § 4.85; there is no room for subjective interpretation. Scores are simply matched against Table VI to find the numeric designation, then the designations are matched with Table VII to find the percentage evaluation to be assigned for the hearing impairment.

To evaluate the degree of disability from defective hearing, the Rating Schedule establishes eleven auditory acuity levels from Level I for essentially normal acuity through Level XI for profound deafness. 38 C.F.R. §§ 4.85, 4.87, Tables VI, VIa, VII. Organic impairment of hearing acuity is measured by the results of controlled speech discrimination tests together with the average hearing threshold level as measured by a pure tone audiometry test in the frequencies of 1,000, 2,000, 3,000, and 4,000 cycles per second. See 38 C.F.R. § 4.85(a), (d). Ratings of hearing loss disability involve mechanical application of the rating criteria to the findings on official audiometry. See Lendenmann v. Principi, 3 Vet. App. 345 (1992). The schedular evaluations are intended to make proper allowance for improvement by hearing aids. 38 C.F.R. § 4.86.

Exceptional patterns of hearing impairment are rated under 38 C.F.R. § 4.86. Specifically, an exceptional pattern of hearing loss is hearing loss of 55 decibels or more in each of the four specified frequencies (i.e. 1000, 2000, 3000, and 4000 Hertz ), and hearing loss with a pure tone threshold of 30 decibels or less at 1000 Hertz and 70 decibels or more at 2000 Hertz. 38 C.F.R. § 4.86(a),(b).

In determining the appropriate rating for the Veteran's hearing impairment, however, VA must also consider whether an extra-schedular evaluation under 38 C.F.R. § 3.321(b) should be assigned in the case where the disability effects on the Veteran's occupational function and daily activities. See Martinak v. Nicholson, 21 Vet. App. 447, 455-56 (2007).

After carefully reviewing the evidence of record, the Board finds that the preponderance of the evidence is against an initial compensable evaluation for bilateral hearing loss disability. The evidence of record does not more nearly approximate the criteria for a compensable evaluation. 38 C.F.R. § 4.7.

A June 2013 VA audiology consultation noted that the Veteran had mild to severe sensorineural hearing loss bilaterally. It was noted that his speech discrimination scores were good in the right ear and excellent in the left ear. It was found that he would benefit from bilateral amplification (hearing aids). The uninterpreted graphs from this consultation are contained in the record as well. In the 2015 Board remand, the Board asked that the graphs be interpreted if possible, and to determine if the speech recognition testing was the Maryland CNC test required for VA evaluation purposes. May 2015 correspondence confirmed that the handwritten audiological graph was a VA graph, and not private as the Board assumed in the 2015 remand. The email noted that the audiological testing was not as precise as the testing used during VA examinations and that the graphs could not be interpreted for Board use. Additionally, the audiologist confirmed that she did not use the Maryland CNC speech recognition test during her June 2013 evaluation. Accordingly, the audiometric data from this examination is not adequate for rating purposes. 

The Veteran was afforded a VA audiological examination in August 2013. The Veteran reported that his hearing loss disability functionally impacted his ordinary conditions of life because it made it difficult to be "around people." 
Pure tone thresholds in the right ear at 1000, 2000, 3000, and 4000 Hertz were of 20, 40, 40 and 50 decibels, respectively, for an average of 38 decibels. Pure tone thresholds measured in the left ear at 1000, 2000, 3000, and 4000 Hertz were 25, 40, 45, and 55 decibels, respectively, with an average of 41 decibels. Speech discrimination scores were reported as 80 percent bilaterally. The examiner diagnosed the Veteran with bilateral sensorineural hearing loss. The examiner opined that his hearing loss was at least as likely as not a result of his military noise exposure.

Application of 38 C.F.R. § 4.85 Table VI to the August 2013 evaluation results in assignment of a Roman Numeral III for each ear. This results in a non-compensable rating under Table VII of 38 C.F.R. § 4.85. The measurements do not meet the criteria for an exceptional pattern of hearing under 38 C.F.R. § 4.86.

On his March 2014 notice of disagreement, the Veteran indicated that he had "problems" with hearing tests he underwent for his employment. Following an October 2014 remand, the RO requested that the Veteran furnish these employment hearing tests or to provide VA with a release of medical information so that the VA could obtain the records. The Veteran did not respond to the November 2011 request.

In December 2014, the Veteran was afforded a second VA audiological examination. Pure tone thresholds in the right ear at 1000, 2000, 3000, and 4000 Hertz were of 40, 60, 65 and 75 decibels, respectively, for an average of 60 decibels. Pure tone thresholds measured in the left ear at 1000, 2000, 3000, and 4000 Hertz were 45, 65, 65, and 75 decibels, respectively, with an average of 63 decibels. Speech discrimination scores were reported as 82 percent on the right, and 88 percent on the left. The Veteran was asked to describe the functional impact of his hearing loss on his life and ability to work, and he responded that he "just can't hear." The examiner noted that the Veteran's hearing loss and speech discrimination scores showed that the Veteran would experience impaired communication, especially with background noise.

Application of 38 C.F.R. § 4.85 Table VI to the December 2014 evaluation results in assignment of a Roman Numeral IV for the right ear, and a Roman Numeral III for the left ear. This results in a 10 percent rating under Table VII of 38 C.F.R. § 4.85. The measurements do not meet the criteria for an exceptional pattern of hearing under 38 C.F.R. § 4.86.

The Board acknowledges that the functional effect caused by the Veteran's hearing disability is the inability to hear in the presence of any background noise, or "around people." Nevertheless, the overall objective evidence of record, as detailed above preponderates against entitlement to a compensable evaluation prior to December 30, 2014. The August 2013 examination provided accurate testing data, including Maryland CNC scores. Although the June 2013 audiological testing could not be interpreted to provide the information required under 38 C.F.R. § 4.85, the examiner acknowledged that the Veteran would benefit from hearing amplification, although his speech discrimination (not using the Maryland CNC testing) was good to excellent. The available auditory test results prior to December 30, 2014 simply do not support a compensable rating under the formulaic rating criteria. 

Consideration has been given to the possibility of assignment of an extraschedular evaluation under 38 C.F.R. § 3.321. Extraschedular consideration involves a three step analysis. Thun v. Peake, 22 Vet. App. 111 (2008). First, a determination must be made as to whether the schedular criteria reasonably describe a veteran's disability level and symptomatology. Id. At 115. If the schedular rating criteria do reasonably describe a veteran's disability level and symptomatology, referral for extraschedular consideration is not required and the analysis stops. Id. If the schedular rating criteria do not reasonably describe a veteran's level of disability and symptomatology, a determination must be made as to whether an exceptional disability picture includes other related factors, such as marked interference with employment and frequent periods of hospitalization. Id. At 116.

If an exceptional disability picture including such factors as marked interference with employment and frequent periods of hospitalization exists, the matter must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for the third step of the analysis, determining whether justice requires assignment of an extraschedular rating. Id. 

The symptoms presented by the Veteran's bilateral hearing loss are fully contemplated by the rating schedule. There is no evidence his disability picture is exceptional when compared to other Veterans with the same or similar disability. While the Veteran's hearing loss pattern included an increase in disability from August 2013 to December 2014, the criteria for hearing impairment includes 38 C.F.R. § 4.86, which addresses exceptional patterns of hearing loss. The Veteran's hearing loss did not meet the criteria for an exceptional pattern of hearing loss. Indeed, the Veteran's complaints of functional impairment from his hearing loss are that he has difficulty hearing in crowded spaces, difficulty hearing women's voices, and difficulty "around people" and that he "just can't hear." The examiner noted that the Veteran's hearing impairment would affect his ability to communicate, especially with background noise. He has made no arguments that his hearing loss has caused a marked interference with employment, and there is no evidence of any hospitalizations related to hearing loss. His indication in his notice of disagreement that his hearing loss has given him "problems" with his work hearing examinations have not been confirmed as the Veteran ignored VA's request for this private evidence. Thus, the Board finds no evidence to indicate referral for extraschedular consideration. Thun v. Peake, 22 Vet. App. 111 (2008).

In sum, there is no basis for assignment of an increased rating for the Veteran's service-connected bilateral hearing loss. As the preponderance of the evidence is against the claim, the benefit of the doubt rule is not applicable. See 38 U.S.C.A. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49, 54-56 (1990).


ORDER

Entitlement to an initial compensable rating for bilateral hearing loss, prior to December 30, 2014 is denied.


REMAND

Virtual records show that the veteran was scheduled for a VA examination in June 2015. The examination was noted to be for an "opinion" related to the Veteran's hearing loss and tinnitus claims. The examination was cancelled; however, it is not clear why the examination was cancelled. As the Veteran's hearing loss increased in severity from August 2013 to December 2014, and he was scheduled for a 2015 examination, the Board will remand for an examination to determine the current severity of his hearing loss.


Accordingly, the case is REMANDED for the following action:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

1. Schedule the Veteran for an additional VA audiological examination to determine the current severity of the Veteran's service-connected hearing loss disability. Ensure that the functional impact of the Veteran's hearing loss disability is discussed in the examination report.

2. After the above is complete, readjudicate the Veteran's claim. If the claim remains denied, issue a supplemental statement of the case (SSOC) addressing the issue. The Veteran and his representative should be given an opportunity to respond, before the case is returned to the Board.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).


______________________________________________
DAVID L. WIGHT
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs