Citation Nr: 1730455 
Decision Date: 07/28/17 Archive Date: 08/09/17

DOCKET NO. 16-19 202 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Denver, Colorado


THE ISSUES

1. Entitlement to an initial evaluation in excess of 70 percent for panic disorder with symptoms of anxiety, sleep disturbance, and depression.

2. Entitlement to an initial compensable evaluation for allergic rhinitis.


REPRESENTATION

Appellant represented by: John S. Berry, Attorney at Law


ATTORNEY FOR THE BOARD

B. Cannon, Associate Counsel


INTRODUCTION

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2016). 38 U.S.C.A. § 7107(a)(2) (West 2014).

The Veteran served on active duty in the United States Navy from April 1998 to March 2000. He was honorably discharged. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from August 2015 rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in Denver, Colorado. No hearing was requested. 

In February 2016, the Board remanded the Veteran's claims of increased rating for anxiety disorder and rhinitis so that the RO could issue a statement of the case, in compliance with Manlincon v. West, 12 Vet. App. 238, 240 (1999). The Board also remanded the Veteran's claims of service connection for low back disability, hypertension, right ankle disability, and TDIU. 

In April 2016, the RO awarded a TDIU effective December 9, 2013. The record does not reflect that the Veteran ever expressed disagreement with the effective date of the rating assigned. Accordingly, this matter is not before the Board. 

In May 2016, the Board denied the Veteran's claims of service connection for an eye disorder, gastroesophageal reflux disease, vertigo, obstructive sleep apnea, and residuals of a left foot fracture, and remanded the Veteran's claim of service connection for inguinal hernia. In December 2016, the RO issued a supplemental statement of the case (SSOC) regarding the Veteran's inguinal hernia claim and this claim has not been recertified to the Board. Accordingly, this matter is also not before the Board. 

In February 2017, VA examinations were conducted for the Veteran's ankle, back, and hypertension disorders, in compliance with the Board's February 2016 remand. Since an SSOC has not been issued regarding the claims for service connection for those disorders, they are also not appropriately before the Board. 

Upon reviewing the development since February 2016, the Board finds there has been substantial compliance with its remand instructions regarding the Veteran's claims for an increased rating for anxiety disorder and allergic rhinitis. See D'Aries v. Peake, 22 Vet. App. 97, 105 (2008) (finding that "only substantial compliance with the terms of the Board's engagement letter would be required, not strict compliance"); Stegall v. West, 11 Vet. App. 268, 271 (1998) (finding that a remand by the Board confers on the appellant the right to compliance with the remand orders). Thus, the Board will proceed to review and decide the claims for increased rating for the Veteran's service-connected psychiatric disorder and allergic rhinitis based on the evidence that is of record.


FINDINGS OF FACT

1. The Veteran's service-connected panic disorder with symptoms of anxiety, sleep disturbance, and depression is characterized by occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as suicidal ideation, obsessional rituals which interfere with routine activities, speech intermittently illogical, obscure, or irrelevant, near continuous panic or depression affecting the ability to function independently, appropriately and effectively, impaired impulse control (such as unprovoked irritability with periods of violence), spatial disorientation, neglect of personal appearance and hygiene, difficulty in adapting to stressful circumstances (including work or a worklike setting), and inability to establish and maintain effective relationships, but not characterized by gross impairment in thought processes or communication, persistent delusions or hallucinations, grossly inappropriate behavior, persistent danger of hurting self or others, intermittent inability of the veteran to perform activities of daily living (including maintenance of minimal personal hygiene), disorientation to time or place, or memory loss for names of close relatives, own occupation, or own name.

2. The Veteran's allergic rhinitis is not characterized by greater than 50 percent obstruction of nasal passages on both sides, complete obstruction of nasal passages on one side, or polyps. 


CONCLUSIONS OF LAW

1. The criteria for an initial disability rating in excess of 70 percent for panic disorder with symptoms of anxiety, sleep disturbance, and depression have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (2014); 38 C.F.R. §§ 3.159, 3.321, 4.1-4.14, 4.130, Diagnostic Code 9412 (2016).

2. The criteria for an initial disability rating in excess of 0 percent for allergic rhinitis have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (2014); 38 C.F.R. §§ 3.159, 3.321, 4.1-4.14, 4.97, Diagnostic Code 6522 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) describes VA's duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). The VCAA applies in the instant case.

Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his or her representative, if any, of any information, and any medical or lay evidence, that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Quartuccio v. Principi, 16 Vet. App. 183 (2002). Proper VCAA notice must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 C.F.R. § 3.159(b)(1). VCAA notice should be provided to a claimant before the initial unfavorable RO decision on a claim. Pelegrini v. Principi, 18 Vet. App. 112 (2004).

The claims arise from disagreement with disability ratings that were assigned following the grant of service connection. Courts have held that once service connection is granted, the claim is substantiated, additional notice is not required, and any defect in the notice is not prejudicial. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007). 

The Veteran's service treatment records are associated with the claims file, as are VA and private medical records. The Veteran has not referenced any other pertinent, obtainable evidence that remains outstanding. Further, the VA medical examination and opinions are adequate, as they are predicated on a substantial review of the record and medical findings, and consider the Veteran's complaints and symptoms. 38 C.F.R. § 3.159(c)(4); Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007). Accordingly, the Board finds VA's duty to assist has been met. 38 C.F.R. § 3.159(c)(4).

II. Increased Ratings

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities, found in 38 C.F.R. Part 4. The percentage ratings are based on the average impairment of earning capacity as a result of a service-connected disability, and separate diagnostic codes identify the various disabilities and the criteria for specific ratings. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. § 4.1 (2016). 

VA has a duty to consider all regulations that are potentially applicable through the assertions and issues raised in the record, and to explain the reasons and bases for its conclusions. Schafrath v. Derwinski, 1 Vet. App. 589 (1991). Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. The Board will consider whether separate ratings may be assigned for separate periods of time based on facts found, a practice known as "staged ratings." Hart v. Mansfield, 21 Vet. App. 505 (2007).

When there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102. When all of the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a fair preponderance of the evidence is against the claim, in which case the claim is denied. Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

A. Initial rating in excess of 70 percent for panic disorder

The RO granted service connection for panic disorder at an initial rating of 70 percent and the Veteran is appealing that decision. Because the claim is an initial claim, the Board will consider evidence of symptomatology from December 9, 2013, the date that the claim was filed. 38 C.F.R. § 3.400(o).

The Veteran is rated under Diagnostic Code 9412. Under that code, a 70 percent rating is provided for occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; veteran's speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a worklike setting); inability to establish and maintain effective relationships. 38 C.F.R. § 4.130.

A 100 percent rating is provided for total occupational and social impairment, due to such symptoms as: Gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability of the veteran to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. Id.

The symptoms associated with the rating criteria are not intended to constitute exhaustive lists, but rather serve as examples of the type and degree of the symptoms, or their effects, that would justify a particular rating. Mauerhan v. Principi, 16 Vet. App. 436 (2002). A Veteran may only qualify for a disability rating under 38 C.F.R. § 4.130 by demonstrating the particular symptoms associated with that percentage, or others of similar severity, frequency, and duration that result in the levels of occupational and social impairment provided. Vazquez-Claudio v. Shinseki, 713 F.3d 112 (Fed. Cir. 2013). To adequately evaluate and assign the appropriate disability rating to the Veteran's service-connected psychiatric disability, the Board must analyze the evidence as a whole, including the Veteran's GAF scores and the enumerated factors listed in 38 C.F.R. § 4.130. Mauerhan, 16 Vet. App. at 436. As this claim was certified to the Board after August 4, 2014, DSM V is applicable to the claim. 

Before undertaking analysis, the Board notes that the Veteran is service-connected for cervical degenerative joint disease, right and left knee instability, tinnitus, and allergic rhinitis, but not for other mental disorders. The Board is precluded from differentiating between symptomatology attributed to a nonservice-connected disability and a service-connected disability in the absence of medical evidence which does so. Mittleider v. West, 11 Vet. App. 181 (1998).

The evidence as a whole weighs against a disability rating of 100 percent. The evidence that is most favorable to the Veteran's claim is a December 2013 Mental Health Symptoms Checklist, in which the Veteran marked boxes to indicate symptoms of delusions, hallucinations, and memory loss. The Veteran did not indicate danger of hurting self or others, inappropriate behavior, neglect of personal hygiene, or problems with communication. Also, the Veteran did not report whether his memory loss was severe, so as to justify a 100 percent rating, or merely impaired, so as to justify a 50 percent rating. The Board notes that the Veteran is considered competent to report all such symptoms, since they are within the knowledge and personal observations of lay witnesses. See Barr v. Nicholson, 21 Vet. App. 303, 307 (2007). Taken together, the reports in the December 2013 Mental Health Symptoms Checklist at best weigh slightly in favor of a 100 percent disability rating. 

Records of the Veteran's interactions with medical professionals weigh against a finding of total occupational and social impairment so as to support a 100 percent rating. In April 2014, the Veteran told a VA Transition Patient Advocate that he had bad credit and was concerned that this would affect his wife's chances for a promotion in the armed forces. Such concern indicates some degree of occupational and social competence. A June 2014 University of Colorado Health note describes the Veteran as "oriented to person, place and time" with normal mood, affect, behavior, judgment, and thought content. In addition, an August 2014 University of Colorado Health note describes the Veteran as "a very pleasant roofing contractor" with "a normal mood and affect" and normal thought content. These notes weigh against a finding of total occupational and social impairment so as to support a 100 percent rating. 

Descriptions of the Veteran's personal activities also weigh against a finding of total occupational and social impairment. In November 2016, the Veteran's attorneys supported his request for money for self-employment services by stating that the Veteran "has a business plan that, with the assistance of the start-up costs, promises to be a success." According to a February 2017 VA medical opinion, the Veteran spends most of his day (at least 6-7 hours) reading and writing, plays with his two small children, and is interested in science and Greek mythology. Taken together, the Veteran is able to develop a business plan that his attorney characterized as "promising," spend multiple hours a day reading and writing, and maintain an interest in complicated subjects. This also weighs against total occupational and social impairment. 

There are also reports that the Veteran is able to drive, suggesting that he is not disoriented as to time and place so as to support a 100 percent rating. A February 2017 VA medical opinion states that the Veteran drove two hours for his appointment. A July 2015 sleep study states that the Veteran "has drowsiness driving." This apparent competence to drive long distances, even when potentially tired, also weighs against a 100 rating. 

The Veteran's July 2015 VA psychological examination further weighs against a 100 percent rating. The examiner concluded that the Veteran had panic disorder, but not posttraumatic stress disorder. In doing so, while the examiner acknowledged the Veteran's odd, paranoid behaviors, Section 5 of the worksheet listed no symptoms consistent with a 100 percent rating. Moreover, according to the examiner, the Veteran denied homicidal thoughts, showed "no evidence of any frank psychosis," and was capable of managing his own financial affairs. This also weighs against a 100 percent rating. 

The Veteran's additional lay statements primarily concern stressors supporting a diagnosis of PTSD. Such statements are irrelevant with regards to symptomatology regarding the Veteran's current diagnosis of panic disorder with symptoms of anxiety, sleep disturbance, and depression. 

The weight of the evidence is against a 100 percent rating. The evidence does not support additional staged ratings for any time period on appeal. For no period would the Veteran be entitled to a higher rating under a different Diagnostic Code. Lastly, the Board finds that the issue of an extraschedular rating has not been raised by the record, and will not consider referral. Doucette v. Shulkin, 28 Vet. App. 366, 371 (2017).

B. Initial compensable rating for allergic rhinitis

The RO granted service connection for allergic rhinitis at an initial rating of 0 percent under Diagnostic Code 6522 and the Veteran is appealing that decision. Because the claim is an initial claim, the Board will consider evidence of symptomatology from October 25, 2014, the date that the claim was filed. 38 C.F.R. § 3.400(o).

Under Diagnostic Code 6522, a 10 percent rating is appropriate for allergic or vasomotor rhinitis without polyps, but with greater than 50 percent obstruction of nasal passage on both sides, or complete obstruction on one side. 38 C.F.R. § 4.97. A 30 percent rating is appropriate for allergic or vasomotor rhinitis with polyps. Id. 

A June 2014 University of Colorado Health treatment note indicated that the Veteran's nose was normal. Nothing was written about nasal polyps or nasal passage obstruction. A July 2015 VA examination reported that there was not greater than 50 percent obstruction for either side of the nasal passage, that there was not complete obstruction of either side of the nasal passage, and that there were no nasal polyps. An October 2015 VA follow-up letter notes "unremarkable sinuses," in light of the fact that "[p]aranasal sinuses are clear," "[m]astoid air cells are well aerated," and "[o]sseous structures are unremarkable." The lack of obstruction or polyps weighs against a compensable rating for the Veteran's rhinitis. 

The evidence does not support additional staged ratings for any time period on appeal. For no period would the Veteran be entitled to a higher rating under a different Diagnostic Code. Lastly, the Board finds that the issue of an extraschedular rating has not been raised by the record, and will not consider referral. Doucette, 28 Vet. App. 371.


ORDER

Entitlement to an initial evaluation in excess of 70 percent for service-connected panic disorder with symptoms of anxiety, sleep disturbance, and depression, is denied.

Entitlement to an initial compensable evaluation for allergic rhinitis is denied.


____________________________________________
Michael J. Skaltsounis 
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs